GERHARD, Respondent, vs. TRAVELERS FIRE INSURANCE COMPANY, Appellant.

*March 13—May 1, 1945.*

For the appellant there was a brief by *Wolfe & Hart* of Milwaukee, and oral argument by *H. O. Wolfe.*

For the respondent there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *Walter T. Bie.*

WICKHEM, J. The question in this case is whether damage to plaintiff's summer cottage located on the east shore of Green Bay by ice blown across the bay and against the cottage is within the coverage of a policy issued by defendant to plaintiff. The question arises upon what is denominated an extended coverage indorsement insuring, in addition to fire risk assumed by the principal part of the policy, perils of "windstorm, cyclone, tornado and hail," except as hereinafter provided. The proviso which is of importance here is as follows:

"This company shall not be liable for any loss or damage . . . occasioned directly or indirectly by or through any tidal wave, high water, overflow, cloudburst, theft; nor for any loss or damage caused by water or rain, whether driven by wind or not, unless the building insured, or containing the property insured, shall first sustain an actual damage to the roof or walls by the direct force of the wind, and shall then be liable only for such damage to the interior of the building or the insured property therein, as may be caused by water or rain entering the building through openings in the roof or walls made by the direct action of the wind, or by water from sprinkler or other piping broken by such damage to roof or walls."

On the occasion in question the ice on the bay was a large sheet varying from one foot to twenty-eight inches in thickness. There was some question whether the ice completely extended from one shore to the other. About noon, with the wind velocity at the weather bureau registering fifteen miles an hour, the ice moved toward the shore a few feet. Between 2 and 3 p. m., with a wind of eighteen or nineteen miles per hour, the ice moved in another six feet. At that time it was within forty feet of the cottage. Between 4 and 5 o'clock p. m., with the weather bureau registering velocities of twenty-eight and twenty-five miles per hour, respectively, the ice sheet reached plaintiff's cottage with a sudden, swift movement from west to east. It moved inland to the shore, sliding up over the land, the edges breaking off, and the ice cakes piling eight to twelve feet high.

Defendant's contention is that this loss was not caused by windstorm, and that in any event, it was not caused by direct action of the wind. It claims that a windstorm is a high wind with little or no precipitation; something more than an ordinary gust or breeze, amounting to an outburst of tumultuous force. This definition would eliminate zephyrs, breezes, and other slight air disturbances.

This policy was drafted by defendant and not only contains no definition of windstorm but uses merely the word "wind" in three or four places in the policy in referring to or limiting its liability. It may be argued with considerable force that the terms "wind" and "windstorm" were used interchangeably in the policy and that they mean substantially the same thing. However, if a distinction is to be taken between "windstorm" and "wind" we think that the trial court's conclusion that there was a windstorm is sustained by the evidence. In the absence of definition or limitation in the policy, we think that a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either by its own unaided action or by projecting some object against it. This

is especially true where, as here, the more violent forms of windstorm are specifically named as something different from a mere windstorm. Any other view would work an imposition upon the insured. If defendant wishes to adopt some scale which establishes the velocity of wind necessary for a windstorm, or if it desires to limit its liability beyond the point that we have indicated, it should incorporate its proposed standard in the policy by clear terms and such ambiguities as are left in this policy should be resolved against it.

Contention that the cottage was not injured by the direct force of the wind is without merit. While the policy expressly excludes from coverage situations where the damage is caused by water unless the wind shall first have breached the walls of the building, that does not mean that hard objects projected against the building by the immediate force of the wind can be eliminated from the policy. They were not expressly limited, and under all tests known to the law constitute damage done by direct action of the wind.

*By the Court.*—Judgment affirmed.