**DRUGGIST MUT. INS. CO. v.
BAKER et al.**

Court of Appeals of Kentucky.
Dec. 12, 1952.

As Modified on Denial of Rehearing
Feb. 6, 1953.

Guy L. Dickinson, Barbourville, for appellant.

Carlos B. Pope, Barbourville, for appellees.

DUNCAN, Justice.

Appellees recovered judgment for $1,594 for damages to their home alleged to have resulted from a windstorm within the coverage of an insurance policy issued by the appellant.

On the night of March 12, 1950, the north wall of appellees' stone house collapsed. In their petition, appellees alleged that the wall fell as a result of a windstorm. Appellant traversed the allegations and plead affirmatively that the collapse was the result of faulty construction, general deterioration, and settlement of walls. Proof was heard on this issue, and the case was submitted to the jury on instructions, which

we shall discuss later in this opinion. The judgment which was entered was in accordance with the verdict of the jury.

Appellant seeks reversal on three grounds: (1) the evidence was not sufficient to sustain the finding of the jury that the damage was the result of a windstorm as that term is used in the policy; (2) the court erred in making a change in the instructions after appellant's counsel had completed his argument; and (3) erroneous instructions. Our discussion will follow the order here given.

The applicable provision of the policy is as follows:

"In consideration of the Windstorm and Hail premium shown on the face of this policy, and subject to the provisions and stipulations set forth below and in this policy, including riders and endorsements added thereto, this policy covers direct loss by Windstorm and Hail to an amount not exceeding the amount specified on the face of this policy."

The appellee, Lloyd Baker, testified that on the night the wall collapsed he was awakened by the sound of wind and the noise of the falling wall. Two other witnesses testified that on the same night the wind was blowing hard. No damage was done to other houses in the vicinity although there is evidence that some of the witnesses observed neighbors of appellees patching their roofs on the following day. There is no indication that the patching which was done was made necessary by any damage occurring on the night in question. Neither is there any evidence as to the recorded velocity of the wind.

"When does a wind become a windstorm?" is the $64 question in this case. There are no cases in Kentucky defining windstorm, and the term is not defined in the policy. The opinions of other States are in hopeless confusion on the subject. It has been indicated that a different meaning might be attributed to the term when used in the policy in connection with the words "tornado" and "cyclone," but diametrically opposite views have been taken as to whether the use of additional words connotes a greater or less violence than when the term stands alone. These contrary views are expressed in Thomas J. Mulgrew Company v. National Union Fire Ins. Company, 187 Iowa 1292, 175 N.W. 50, and Gerhard v. Travelers Fire Ins. Company, 246 Wis. 625, 18 N.W.2d 336.

Some courts have used recorded velocity as a means of determining when a wind becomes a windstorm. In Bogalusa Gin & Whse. Company v. Western Assurance Company, 199 La. 715, 6 So.2d 740, it was held that wind having a velocity of thirty-five miles per hour reached the degree of a windstorm, it being there shown that the U. S. Weather Bureau considered an average velocity of twenty-seven miles an hour as of sufficient force to be so considered. In Clark v. Fidelity & Guaranty Fire Corporation, City Ct., 39 N.Y.S.2d 377, wind having a velocity of twenty-eight miles per hour was held not to be a windstorm.

In Thomas J. Mulgrew Co. v. National Union Fire. Ins. Company, supra, windstorm was defined as a storm characterized by high winds with little or no precipitation, while in Firemens Ins. Company of Newark, N. J. v. Weatherman, Tex.Civ.App., 193 S.W.2d 247, it was held that in order to sustain recovery under a windstorm policy it was immaterial whether there was much, little, or no rainfall.

We are not impressed with any of the definitions or tests which have been applied in the cases mentioned. It seems to us that in the absence of a definition or a limitation in the policy a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property, assuming the property to be in a reasonable state of repair. Applying that test to the evidence in this case, we are of the opinion that the evidence, although slight, was sufficient to take the case to the jury on the question of whether or not appellees' loss resulted from windstorm.

Appellant's second complaint relates to changing of the instructions by the court after argument and before submission of the case. Although Section 317(5) of the Civil Code declares that written instructions to the jury shall be "given or

refused by the court before the commencement of the argument to the jury", we have held that prejudicial error was not committed in the correction of erroneous instructions after argument if counsel was given an opportunity to re-argue the case after the correction. First Nat. Bank v. Stephens & Steely, 157 Ky. 663, 163 S.W. 1097. Such an opportunity was afforded counsel for appellant in this case. The point is, therefore, overruled.

Instructions I and III as given to the jury were as follows:

I. If you believe from the evidence that at the time complained of the plaintiffs Lloyd Baker and Dovie Baker suffered damages as described hereinafter to their home as described in the evidence and such damage was caused by wind perils covered in the policy of insurance issued to plaintiffs by defendant then you shall find for the plaintiff. Unless you so believe you will find for the defendant.

III. If you believe from the evidence herein that the damage to plaintiffs' residence was not brought about by the wind, and that said damage, if any, was brought alone by the faulty construction or general deterioration or settlement of walls or to the disintegration of the wall or walls, causing it to fall, it will be your duty to find for the defendant, the Druggist Mutual Insurance Company.

It will be observed that the first instruction permits the jury to determine which wind perils are covered by the policy, and instruction III authorizes a verdict for the defendant only in the event the jury should conclude that the collapse of the wall was brought about alone by the faulty construction. Both instructions are erroneous.

Under the policy, appellant is liable only for a loss which is the direct result of windstorm as that term is defined in this opinion. Upon a subsequent trial, the court will submit that issue to the jury, following the terms of the policy, and will give a separate instruction defining windstorm.

Counsel for appellees insist that appellant is in no position to complain of the erroneous instructions because no correct instruction was offered in its behalf. Where the error in instructions is merely one of omission, the error is waived unless the complaining party offered an instruction upon the point or points which should have been covered by the omitted instruction. However, where the error is one of commission and the instructions given are erroneous, the error is not waived by the failure to offer instructions.

Appellees also insist that instruction III as given was invited by appellant because its answer charged that the faulty construction, deterioration, and settlement of the walls were alone responsible for the collapse. Although the word "alone" is used in the answer, we view the pleadings as a whole as presenting the issue of whether the wind or faulty construction and deterioration was the direct and proximate cause of the damage.

The judgment is reversed for proceedings consistent with this opinion.