QUEEN INSURANCE COMPANY OF
AMERICA, a corporation,
Appellant,

v.

Ivan W. LARSON and Elwood W. Buck,
doing business as Larson & Buck
Glass Company, Appellees.

No. 14211.

United States Court of Appeals
Ninth Circuit.

Aug. 5, 1955.

Rehearing Denied Sept. 9, 1955.

Smith, Wild, Beebe & Cades, William L. Fleming, Eugene H. Beebe, Honolulu, Hawaii, for appellant.

Kenneth E. Young, Honolulu, Hawaii, William M. Blatt, Washington, D. C., for appellees.

Before MATHEWS and ORR, Circuit Judges, and DRIVER, District Judge.

MATHEWS, Circuit Judge.

On May 12, 1953, in the Circuit Court for the First Circuit of the Territory of Hawaii, plaintiffs, Ivan W. Larson and Elwood W. Buck, citizens of Hawaii, doing business as Larson & Buck Glass Company, brought an action against defendant, Queen Insurance Company of America, a New York corporation, thereby seeking to recover of defendant $16,331.91, with interest and costs. On petition of defendant, the action was removed to the United States District Court for the District of Hawaii.[1] There defendant answered, a pre-trial conference was held, and a pre-trial order was made and entered.[2] So far as pertinent here, that order was as follows:

"Nature of Proceedings

"This is an action for breach of contract, seeking damages based on defendant's refusal to pay plaintiffs the actual value of certain property, principally

[1]. See 28 U.S.C.A. §§ 1332, 1441–1450; 48 U.S.C.A. § 645.

[2]. See Rule 16 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

glass, which was damaged on or about March 12, 1953, in plaintiffs' warehouse. Plaintiffs allege that the property was covered by an insurance policy issued by the defendant against direct loss by perils of windstorm up to 100 per cent of its value. The defendant denies that the loss was covered by the insurance policy.

"Admitted Facts

"The following facts have been agreed upon by the parties, and require no proof:

"1. That the plaintiffs are citizens of the Territory of Hawaii; that the defendant is a citizen of New York and that the amount in controversy exceeds $3,000.

"2. That Home Insurance Company, Ltd., is a Hawaiian corporation, and at all times in these proceedings set forth was duly acting as general agent for the defendant.

"3. That on June 4, 1952, the defendant, through its agent, Home Insurance Company, Ltd., issued to the plaintiffs Standard Fire Insurance Policy No. 225525, with an extended coverage endorsement insuring the ' * * * stock of goods, wares and merchandise of every description, consisting principally of Glass and Other Building Materials manufactured, unmanufactured, or in process of manufacture; materials and supplies which enter into the manufacture, packing, handling, shipping and sale of same; * * * ' against direct loss by perils of windstorm up to 100% of its value. The policy is marked as Exhibit No. 1, and may be introduced in evidence.[3]

"4. That on or about March 12–13, 1953, the above policy was in full force and effect, covering property located in the plaintiffs' warehouse at the corner of Nimitz Highway and Pacific Street, Honolulu, T. H.

"5. That the said warehouse is 2.93 miles from the office of the United States Weather Bureau at Honolulu Airport and .71 miles from the Federal Building, Honolulu, T. H.

"6. That on or about March 12–13, 1953, a quantity of glass, which was covered by the above policy, was located in the aforesaid warehouse, and was destroyed and became a total loss.

"7. That at the time and place aforesaid, wooden racks in which said glass was stored also became a total loss.[4]

"8. That the cost and value of glass so destroyed, delivered to the dock at Honolulu on or about March 12–13, 1953, was $12,483.55; that in addition to such cost, there should be added the reasonable value of services required to transport and deliver the glass from the dock to the plaintiffs' warehouse and to uncrate and stack the glass; [5] and that other allowable damages, if any, shall be determined by the Court.

"9. That on March 13, 1953, the defendant was orally notified by the plaintiffs of the said breakage and destruction, and that the defendant forthwith caused an investigation to be made.

"10. That on or about March 25, 1953, the plaintiffs furnished to the defendant a letter dated March 25, 1953, itemizing the damage resulting from the March 12–13 loss together with a sup-

---

3. The policy, including the endorsement mentioned above, was introduced in evidence as Exhibit No. 1. By the policy, including the endorsement, plaintiffs were insured against direct loss by windstorm. They were not insured against any loss by a peril or perils of windstorm. However, at the argument in this court, it was orally stipulated by counsel for plaintiffs and counsel for defendant that, as used in the pre-trial order and elsewhere in the record, the term "peril of windstorm," the term "perils of windstorm," the term "windstorm or a peril of windstorm," the term "windstorm or perils of windstorm" and the term "windstorm and perils of windstorm" meant windstorm and had no other meaning.

4. There was no agreement or stipulation as to whether the racks were covered by the policy. However, after the pretrial order was entered, counsel for plaintiffs and counsel for defendant agreed that the value of the racks at the time of their destruction was $2,400.

5. There was no agreement or stipulation as to what was the reasonable value of such services. However, the evidence showed that it was $1,012.51.

porting inventory and prices, a true and correct copy of which said inventory is marked Exhibit No. 2, and may be introduced in evidence.[6]

"11. That on or about April 23, 1953, and prior to May 4, 1953, the defendant denied its liability for the aforesaid loss, on the ground that the cause of the loss was not a risk covered by the terms of said policy, and informed the plaintiffs that the claim would not be paid.

"12. That on April 24, 1953, Home Insurance Company, Ltd., as agent for the defendant, received a letter from Kenneth E. Young as attorney for the plaintiffs demanding payment of the said loss under the said policy of insurance.

"13. That at some time between April 24 and May 4, 1953, at the request of Kenneth E. Young, Home Insurance Company, Ltd., furnished its proof of loss forms, in blank, to the plaintiffs.

"14. That proof of loss upon the forms furnished by Home Insurance Company, Ltd., under the said policy No. 225525, signed by the plaintiffs before a Notary Public, was received by the defendant on May 4, 1953, a true and correct copy of which proof of loss is marked Exhibit No. 3 and may be introduced in evidence.[7]

"Plaintiffs' Contention of Fact

"Plaintiffs claim that a windstorm and perils of windstorm directly caused the loss to the property insured under the insurance policy.

"Defendant's Contention of Fact

"Defendant denies that the loss which occurred was a risk covered by the terms of the insurance policy, on the ground that the loss was not directly caused by a windstorm and perils of windstorm.

"Issue of Fact

"Whether plaintiffs' loss was directly caused by a windstorm and perils of windstorm within the meaning of the insurance policy.

\* \* \* \* \* \*

"Stipulations

"1. That the Court will take judicial notice of Beaufort's scale—a scale devised by Sir Francis Beaufort, R.N., in 1805, in which the strength of the wind is indicated by numbers from 0 to 12.

"2. That the Court will take judicial notice of the United States Weather Bureau's Classification of winds according to velocity and the Bureau's symbols.

"It Is Hereby Ordered that the foregoing constitutes the pretrial order in the above-entitled cause, that it supersedes the pleadings, which are hereby amended to conform thereto, and that said pre-trial order shall not be amended during the trial except by consent or by order of the Court to prevent manifest injustice."

There was a jury trial at which evidence was adduced by plaintiffs and defendants. The jury returned a special verdict [8] reading as follows:

"We, the jury, in the above-entitled cause, find that the loss sustained by the plaintiffs \* \* \* on March 12 or 13, 1953, was directly caused by a windstorm, or perils of windstorm, within the meaning of the insurance policy issued by the defendant \* \* \*."

Thereafter the District Court, sitting without a jury, heard further evidence and entered a judgment for plaintiffs for $15,896.06,[9] with interest and costs. Defendant has appealed.

---

6. A copy of the letter and inventory was introduced in evidence as Exhibit No. 2.

7. A copy of the proof of loss was introduced in evidence as Exhibit No. 3.

8. See Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

9. Itemized as follows:

| | |
|---|---|
| Value of the glass, delivered at the dock in Honolulu, | $12,483.55 |
| Reasonable cost of transporting the glass from the dock to plaintiffs' warehouse and placing it in the racks, | 1,012.51 |
| Value of the glass at the time of its destruction, | $13,496.06 |
| Value of the racks at the time of their destruction, | 2,400.00 |
| Total, | $15,896.06 |

**50**

■ Sixteen alleged errors are specified.[10] Specification 1 relates to the admission of testimony of Edgar A. Kudlich[11] to the effect that it was Kudlich's idea that plaintiffs purchase the policy, including the endorsement mentioned above. We agree with defendant that this testimony was irrelevant and immaterial. However, its admission does not appear to have prejudiced defendant.

■ Specification 2 alleges that the District Court erred in allowing Kudlich to testify that the racks were, in his opinion, "a reasonable risk to insure." Actually, Kudlich did not so testify. He was asked whether, in his opinion, the racks and the glass were "a reasonable insurance risk to underwrite." His answer was that "this was just an average mercantile risk of which there are hundreds in 'Hawaii." Defendant did not object to or move to strike the answer, nor does the answer appear to have prejudiced defendant.

■ Specification 3 relates to the admission of testimony of plaintiff Larson to the effect that, in his opinion, the racks were amply braced to withstand any normal external pressure. Defendant's objections to this testimony were that it was incompetent, irrelevant, and immaterial, and that Larson was not shown to be qualified to give such testimony. There was no merit in these objections. The testimony was competent, relevant and material, and Larson's qualifications were amply shown.

■ Specification 4 relates to the admission of testimony of Larson to the effect that, in a conversation between Larson and Chester Lim[12] on March 13 or 14, 1953, Lim stated that plaintiffs did not have much of a chance to collect on the policy. Specification 5 relates to the admission of testimony of Larson to the effect that, in a conversation between Larson and Fritz Kleene[13] on or about March 19, 1953, Kleene stated that an investigation of plaintiffs' case was being made, that he did not have all of the information on the case, that he was reviewing the case and having the information compiled, and that he would write to defendant about the case. Specification 6 relates to the admission of testimony of Larson to the effect that, in the conversation between Larson and Lim on March 13 or 14, 1953, Lim represented himself to be an agent of defendant's general agent. We agree with defendant that all of the testimony mentioned in specifications 4, 5 and 6 was irrelevant and immaterial. However, its admission does not appear to have prejudiced defendant.

■ Specification 7 relates to the admission of testimony of Richard C. Van Etten.[14] This specification does not, as required by our Rule 18,[15] quote the full substance of the testimony said to have been erroneously admitted. Hence we are not required to consider this specification.[16] However, we have considered it and find no merit in it.

10. Our Rule 18 (formerly Rule 20) provides:
  "1. Counsel for the appellant shall file with the clerk of this court 20 copies of a printed brief * * *.
  "2. This brief shall contain * * *.
  "(d) In all cases a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. When the error alleged is to the admission or rejection of evidence the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the printed or typewritten transcript where the same may be found. * * * "

11. Kudlich was an agent of defendant's general agent, Home Insurance Company Ltd., through which defendant issued the policy to plaintiffs.

12. Lim was an employee of defendant's general agent.

13. Kleene was the president of defendant's general agent.

14. Van Etten was the superintendent of the claims department of defendant's general agent.

15. See footnote 10.

16. Jung v. Bowles, 9 Cir., 152 F.2d 726; Ziegler v. United States, 9 Cir., 174 F. 2d 439; Mosca v. United States, 9 Cir., 174 F.2d 448; Du Verney v. United

Specifications 8, 9 and 10 relate to the admission of Exhibit No. 10, Exhibit No. 12 and portions of Exhibit No. 11 in evidence. Exhibit No. 10 was a notice transmitted to defendant by its general agent on March 18, 1953,[17] reading as follows:

"Please accept notice of loss to property described below:

"Policy No.: 225525.

"Amount: 100% of Limits—$40,-000.00.

"Agency: Home Insurance Co. of Hawaii.

"Insured: Ivan W. Larson and Elwood W. Buck, dba Larson and Buck Glass Co.

"Location: 749 Prison Road, Honolulu, T.H.

"Date of Loss: 3–13–53.

"Cause of Loss: Windstorm.

"Item:

"Loss Estimated:

"Gust of wind blew over rack of glass."

▆ Thus, in and by Exhibit No. 10, defendant's general agent notified defendant that plaintiffs claimed to have suffered a loss caused by windstorm; but defendant's general agent did not, in or by Exhibit No. 10, state or admit that plaintiffs had, in fact, suffered such a loss. So far as the record shows, no such statement or admission was ever made by defendant or any agent of defendant.

Exhibit No. 11 was a letter to defendant from its general agent dated March 18, 1953.[18] The portions thereof admitted in evidence were as follows:

"On the morning of Friday, March 13, we were notified by Mr. Buck of Larson & Buck that a rack of plate glass had been blown over by the wind during the previous night. The loss was referred to the office of Mr. George Whitaker [19] for investigation and adjustment and Mr. Whitaker's report will be forthcoming soon, probably by the end of this week.

" * * * There were two or three other racks on the premises which were not damaged and there was no damage by windstorm to the structure, an open type shed, which housed the glass. The Weather Bureau has orally stated that there were no strong winds at their station at the Honolulu Airport but weather conditions were such that there were small areas over the Islands having thunder, lightning and heavy showers and very possibly strong gusts in localized areas. Mr. Whitaker's investigation, of course, is including a detailed report from the Weather Bureau."

Exhibit No. 12 was a letter from defendant to its general agent dated March 20, 1953, reading as follows:

"We have your March 18th letter with attached notice of loss which has been referred to the office of Mr. George Whitaker for investigation.

"We can hardly see where this loss would come under the interpretation of a windstorm. Under the terms of the extended coverage endorsement, we pay for damage due to windstorm and not merely damage due to wind or a gust of wind.[20] It is our understanding that there have been similar cases in California that have been denied and successfully defended in the courts. Before Mr. Whitaker goes ahead and makes any commitment, we suggest that you advise him that in our opinion, the loss would not appear to be a proper windstorm claim.

States, 9 Cir., 181 F.2d 853; Lii v. United States, 9 Cir., 198 F.2d 109; Cly v. United States, 9 Cir., 201 F.2d 806; Gordon v. United States, 9 Cir., 202 F.2d 596; State of Washington v. United States, 9 Cir., 214 F.2d 33.

17. The notice was entitled "notice of loss." Actually, however, it was a notice of a claim of loss—a claim made by plaintiffs.

18. Exhibit No. 11 was attached to, and was transmitted to defendant with, Exhibit No. 10.

19. Whitaker was an insurance adjuster.

20. Although Exhibit No. 12 was admitted in its entirety, counsel were permitted to read to the jury only the first paragraph and the first two sentences of the second paragraph thereof.

"We shall appreciate your careful attention to our interests, and if legal action is initiated, it will be in order for you to refer the matter to your attorneys for proper defense."

■ We agree with defendant that Exhibit No. 10, Exhibit No. 12 and the above-quoted portions of Exhibit No. 11 were irrelevant and immaterial. However, their admission does not appear to have prejudiced defendant.

■ Specification 11 relates to the giving of the following instruction to the jury: "You are instructed that any statements, written or oral, made by an authorized agent or employee of the defendant, Queen Insurance Company of Hawaii, Limited, within the scope and course of his employment is binding on the Queen Insurance Company of America." This instruction does not appear to have prejudiced defendant.[21] Hence we need not and do not decide whether it was correct or incorrect.

■ Specification 12 relates to the giving of the following instruction to the jury: "If you find that the windstorm or a peril of windstorm [22] was the direct, efficient, predominating cause of the loss in this case, then it is immaterial and no defense that the glass racks could have been of more sturdy construction." Defendant's objection to this instruction was as follows: "We object to that, if your Honor please, upon the ground that the evidence which is undisputed indicates that the glass racks were improperly constructed [23] and that this overlooks that completely and just uses the language of 'more sturdy construction' and there is no evidence in the record along that score." There was no merit in this objection. The question before the jury was whether plaintiffs' loss was directly caused by windstorm. If it was so caused, plaintiffs were entitled to recover, regardless of how the racks were constructed.

Specification 13 relates to the giving of the following instruction to the jury: "The term 'windstorm' as used in the insurance policy [24] means something more than an ordinary gust of wind or current of air, although it is not necessary that the wind be of any specified duration or specified velocity. The term means a wind of extraordinary or unusual violence such as to be capable of damaging the insured property."

Specification 14 relates to the District Court's refusal to give the jury the following instruction requested by defendant: "The term 'windstorm' as used in a policy of insurance such as that with which we are here concerned means a wind of unusual violence. It is something more than an ordinary gust of wind or current of air no matter how long continued. It need not have the violence or the twirling or whirling features of a cyclone or tornado, but it must assume the aspects of a storm, that is, an outburst of tumultuous force."

■ Defendant's objection to the instruction mentioned in specification 13 and to the District Court's refusal to give the requested instruction mentioned in specification 14 was as follows: "To which we object, if your Honor please, upon the ground that in our opinion it [the requested instruction mentioned in specification 14] does state the law in the case or is a correct construction of the term 'windstorm,' your Honor's instruction [the instruction mentioned in specification 13] overlooking, as we understand it, the definition set forth by ordinary gusts or wind currents, no matter how long and continued, and overlooks completely that it is not to be of tumultuous force as requested by our instruction." There was no merit in this objection. We hold that the term "wind-

---

21. So far as the record shows, no statement prejudicial to defendant was made by any authorized agent or employee of defendant or its general agent, within the scope and course of his employment.

22. See footnote 3.

23. Actually, there was substantial evidence that the racks were properly constructed.

24. The term was not defined in the policy.

storm" was correctly defined in the instruction mentioned in specification 13,[25] and that no other or further definition was required. If defendant wished the term to have the meaning indicated in the requested instruction mentioned in specification 14, it should have so defined it in the policy.[26] This was not done.

■ Specification 15 relates to the District Court's refusal to give the jury the following instruction requested by defendant: "You are instructed that unless you are convinced by a preponderance of evidence that the glass of the plaintiffs was damaged as a result of windstorm and not by reason of it being stored in improperly constructed or designed racks, your verdict should be for the defendant. If the evidence is evenly balanced in your minds on this score, your verdict must be for the defendant." Thus, in effect, the requested instruction asserted that plaintiffs had the burden of proving that their glass was not damaged by reason of being stored in improperly constructed or designed racks. Actually, plaintiffs had no such burden. They had, instead, the burden of proving that their loss was directly caused by windstorm. As to that burden, the jury was correctly and sufficiently instructed. The requested instruction was properly refused.

■ Specification 16 relates to the District Court's holding that the racks were covered by the policy. As indicated above, the policy covered (1) a stock of goods, wares and merchandise consisting principally of glass and other building materials and (2) materials and supplies which entered into the manufacture, packing, handling, shipping and sale thereof. The District Court found that the racks were used in the handling and sale of the glass which constituted part of the stock of goods, wares and merchandise, thus, in effect, finding that they were materials and supplies which entered into such handling and sale.[27] The finding was supported by substantial evidence and was not clearly erroneous. We therefore accept it as correct[28] and conclude, as did the District Court, that the racks were covered by the policy.

Judgment affirmed.

25. Cf. Gerhard v. Travelers Fire Ins. Co., 246 Wis. 625, 18 N.W.2d 336; Fidelity-Phenix Fire Ins. Co. v. Board of Education, 201 Okl. 250, 204 P.2d 982; Anderson v. Connecticut Fire Ins. Co., 231 Minn. 469, 43 N.W.2d 807; Druggist Mutual Ins. Co. v. Baker, Ky., 254 S.W. 2d 691; Old Colony Ins. Co. v. Reynolds, Ky., 256 S.W.2d 362; Albert Lea Ice & Fuel Co. v. United States Fire Ins. Co., 239 Minn. 198, 58 N.W.2d 614; Pearson v. Aroostook County Patrons Mutual Fire Ins. Co., Me., 101 A.2d 183.

26. Cf. Fidelity-Phenix Fire Ins. Co. v. Board of Education, supra.

27. The issue thus determinated by the District Court was not submitted to the jury, nor did either party demand that it be so submitted. See Rule 49(a) of the Federal Rules of Civil Procedure, 28 U. S.C.A.

28. See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.