182 S.E.2d 44 (1971)
H. C. LEWIS, Jr., et al.
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, etc., et al.
No. 12955.
Supreme Court of Appeals of West Virginia.
Submitted May 11, 1971.
Decided June 29, 1971.
*45 Sanders & Blue, Fred O. Blue, Bluefield, for appellants.
Camper & Watson, Harry G. Camper, Jr., Welch, for appellees.
CAPLAN, President:
This is an appeal from a judgment of the Circuit Court of McDowell County in a civil action instituted in that court. The plaintiffs, H. C. Lewis, Jr. and Bill A. Gergley, sought to recover from the defendants, St. Paul Fire and Marine Insurance Company and United States Fire Insurance Company, for damages to the roof of a building owned by them and insured by said companies. Upon trial of this case the jury returned a verdict in favor of the plaintiffs in the amount of $1,949.91. Judgement was entered on that verdict and the defendants prosecute this appeal.
In June 1963 the plaintiffs acquired a steel and concrete block building which was located on Riverside Drive in a section of Welch, McDowell County, known as Coney Island. It was essentially a one story building although the rear quarter was two stories. The roof involved in this action is flat, it being enclosed by a parapet wall which extends approximately one foot above the surface of the roof. This flat roof measures approximately thirty-five feet in width and eighty-nine feet in depth.
On May 21, 1968 the plaintiffs purchased fire insurance from the Welch Insurance Agency covering the aforesaid building. This insurance in the amount of $28,000, $14,000 of which was written through defendant United States Fire Insurance Company and the remaining $14,000 through defendant St. Paul Fire and Marine Insurance Company, became effective June 22, 1968. Each of these policies contained extended coverage "to insure against direct loss by windstorm * * * except as hereinafter provided." The exception reads: "This Company shall not be liable for loss caused directly or indirectly by frost or cold weather, or ice (other than hail) snow or sleet, whether driven by wind or not."
In their complaint the plaintiffs allege that on or about July 17, 1968 the building covered by the aforesaid insurance policies was damaged and that they sustained a loss within the terms of said policies, particularly under the terms relating to extended coverage. They further allege that they have demanded payment from each of the defendant insurance companies and that said companies have refused to honor their demands.
It appears from the record that at approximately 2:30 P.M. on July 17, 1968 various parts of McDowell County, including the Coney Island section, experienced a heavy rainstorm accompanied by wind which according to witnesses varied from fairly mild to violent. During this storm the roof described above collapsed, resulting in the damage complained of in this action. The testimony in relation to the weather conditions in the vicinity of the plaintiffs' building was conflicting. Doubtless a large quantity of water accumulated on the roof by reason of the heavy rainstorm, as evidenced by the flooded condition of the railroad underpass within a few hundred yards of the subject building. It appeared that there were a few limbs scattered around in the vicinity of Coney Island but there was little or no debris in the immediate vicinity of the plaintiffs' building; nor were there any windows broken in said building or adjacent buildings which were occupied by a food store and an auto sales garage, each of which had plate glass windows.
It is the position of the plaintiffs that the damage to the roof of the building was caused by the force of the wind although admittedly the weight of the accumulation of rain contributed as a cause of the damage. They say that the water was driven by the wind so as to accumulate in such great weight that it caused the damage. Therefore, reason the plaintiffs, this loss is *46 covered by the extended coverage provisions of the above mentioned insurance policies. The defendants on the other hand deny that there is any evidence which would warrant a finding that the wind caused this damage. They admit that there was some wind in the area that day but not of sufficient force to drive the rain on the roof of the building as contended by the plaintiffs.
The issue is whether the damage to the roof of the plaintiffs' building was the direct loss by windstorm within the meaning of the extended coverage provision of the insurance policies. In order to resolve this issue it is necessary to consider the testimony adduced at the trial.
The appellants' principal assignments of error can be coupled and considered together as one, namely, that there was no proof that the damage to the appellees' building was the "direct loss by windstorm" as required by the extended coverage provisions of the insurance policies.
The plaintiffs and five witnesses offered testimony on their behalf. Plaintiff Lewis testified that on July 17, 1968 there was a violent windstorm and rainstorm in the area and the roof of the building collapsed. He further testified that there were "lots of small tree limbs and trash blown on the street" and that there were small pieces of shingles broken off his house which was in an area other than that of the subject building. According to his testimony there were no broken windows in the building nor had he noticed any broken windows in adjoining buildings. In relation to the rainfall he related that the underpass located a "couple of hundred yards" from their building was flooded with approximately three feet of water. He knew very little about the damage of the roof other than that it had collapsed.
Plaintiff Gergley testified that on July 17, 1968 while he was on his way back from Roderfield he encountered a violent windstorm. He testified it was "something like a whirlwind, violent like it almost might be called a tornado sized wind, blowing from Roderfield." This plaintiff related in support of the allegations in the complaint, that the Coalirons, witnesses for the plaintiffs, told him that their roof had been damaged on July 17, 1968. The record reveals that the Coalirons' home is "approximately nine miles" from Coney Island in Welch. This testimony in relation to the Coalirons' home and, in fact, the subsequent testimony by the Coalirons is, therefore, of no probative value. Mr. Gergley further testified that he did not observe any broken windows in the area of their building and that his home in Welch suffered no damage.
Carlisle Chewning, appearing on behalf of the plaintiffs, testified that he saw a sign on a building in Welch which, in his opinion, "was blown down". Objection to his opinion that the sign had blown down was sustained by the court, and inasmuch as he did not see the sign go down, nor could he say when he last observed the sign on the building, his testimony is of little or no probative value. Mr. Boone testified that he was the adjuster for both insurance companies and opined that the building on which the subject policies were issued was probably an acceptable risk.
Albert Falvo is the witness upon whose testimony the plaintiffs principally rely. He testified that he was in Welch, about three-quarters of a mile from Coney Island, on July 17, 1968 when he became aware of a storm, which he described as a "windy blowing rain." Mr. Falvo related that he had done some of the repair work on this roof. Thereupon he was asked his opinion as to the cause of the roof collapse. The defendants objected on the ground that Falvo was not an expert and the court sustained the objection. Counsel then established that the witness had at least twenty-four years experience in the construction business and that during that period he had had occasion to repair buildings and roofs. He was then permitted by the court, over the objection of counsel for *47 the defendants, to state his opinion as to why the roof collapsed.
The following questions and answers were then adduced: "Q. What is that opinion? ObjectionOverruledException. A. My opinion is that the wind and rain combination. I don't think now that the wind could blow the roof in nor the rain by itself. It had to be a combination of both, not what accumulated so much water up there. Q. You mean the accumulation of water on the roof? A. Yes. I don't think the wind alone would blow the roof in, nor do I think the rain by itself could have did the job. It had to be both of them together." The main thrust of this witness' testimony appears to be that the large quantity of water on the roof was blown to one end by the wind and, when the wind subsided, the rain water was permitted to rush to the other end with such force and weight that it caused the collapse of the roof. However, his statements tend to establish that the break in the roof occurred toward the middle. He further related that the one drain was not sufficient to permit a ready drainage of a large quantity of rain water.
Pertinent to this issue is the following testimony of Mr. Falvo: "Q. What did the wind do? * * * A. Well, for one thing, that building is eighty feet long and that wind could have kept that water from running on down and going out into the drain, so when it would slack up, it came down and accumulated on top, which if it had just rained, the water would have went on out. * * * Q. You are stating the weight of the water caused the roof to collapse. A. Yes, but what held the water up there?" He further testified: "Q. Your testimony today is that the wind and rain in combination did damage to the building by causing an accumulation of water on the roof. Is that correct? A. Right. Q. And the weight of the water then collapsed the roof? A. Well, that was the main part of it, was the weight of the water."
Introduced in evidence was a signed statement of Mr. Albert Falvo which was given to W. Fred Sanders, Jr., an adjuster for the defendant insurance companies. This statement was dated March 18, 1969, several weeks prior to the trial. Therein this witness made the following assertions: "It rained real hard on 7/17/68, for maybe a hour and the water accumulated on the roof too fast for the drain they had. It flooded the underpass at Coney Island as well as the underpass on lower McDowell St. The drain on the roof, as I recall was about 6" in diameter. It would not let the water drain from the roof fast enough and, as a consequence, the weight of the water on the roof, caused it to collapse. The roof was sloped toward the drain or drains on the North side of the building and it collapsed from that end. There was some wind in the area that day but not sufficient to do any windstorm damage. There was no wind damage in McDowell County or Welch, W. Va. on that day that I know of. I have read the statement above, it is true."
The testimony of the witnesses for the defendants, for the most part, disputed that offered on behalf of the plaintiffs. Such conflict, of course, is ordinarily for resolution by the jury. However, the plaintiffs must establish a prima facie case by their evidence and if such evidence fails to so show that the damage complained of was the "direct loss by windstorm" such damage is not within the coverage of the insurance policies and the plaintiffs cannot recover.
Upon the consideration of the testimony alluded to above, we are of the opinion that the plaintiffs have failed to establish by a preponderance of the evidence that the roof was damaged by a windstorm. As noted in LaBris v. Western National Insurance Company, 133 W.Va. 731, 59 S.E.2d 236, "it must be established that a windstorm of itself was sufficient to, and did cause the damage to plaintiff's roof, though there may be other contributing *48 causes." In that case the insurance policy extended coverage, as in the instant case, to include "direct loss by Windstorm." Although the evidence in the LaBris case necessarily differs from that offered in the instant case the legal principles expressed therein apply equally to both.
There is no competent testimony in the record of this case which tends in any manner to prove that the damage to the roof was caused by windstorm. Rather, the evidence preponderates heavily in favor of the defendants' contention that the damage was caused solely by the weight of the accumulated rain water. Referring to the testimony outlined above, we are of the opinion that such testimony is purely conjectural and speculative. Even if Mr. Falvo did qualify as an expert, upon which we do not comment, his testimony, taken as a whole, says no more than that if the wind blew hard enough to accumulate water in a large quantity such wind could cause the damage complained of. Nowhere does it appear by any credible evidence that such was the case. This type of speculative evidence is not competent to create a prima facie case.
In Point 4 of the syllabus of State of West Virginia for Use of Stout v. Rogers, 132 W.Va. 548, 52 S.E.2d 678, the Court expressed the following view, in which we concur: "The verdict of a jury in favor of a plaintiff, based on testimony which does nothing more than furnish grounds for conjecture or speculation as to the proper verdict to be returned cannot be justified, and will be set aside by this Court." The evidence offered by the plaintiffs in the instant case does nothing more than furnish grounds for conjecture or speculation. In effect, the plaintiffs said that the area in which their building was located was subjected to a windstorm; that the wind could blow the water so that it would accumulate; and that if that occurred the weight of the water could cause the roof to collapse. No testimony was offered to show that this did happen, only that it is possible that the damage could have occurred in this manner.
The evidence of wind in sufficient force in the vicinity of this building to cause the damage in the manner contended by the plaintiffs was negligible. There was, however, undisputed evidence of large quantities of water on the roof. The heavy rains were of sufficient force to cause an accumulation of water up to three feet in an underpass near the plaintiffs' building. Furthermore, there was unrefuted evidence that after the collapse of the roof there was six inches of water on the floor of said building. We believe that the evidence was insufficient to justify an inference that the wind was the efficient, direct and proximate cause of the roof damage.
In view of our decision in this case we deem it unnecessary to consider the other assignments of error. For the reasons stated herein the judgment of the Circuit Court of McDowell County is reversed and the case is remanded for a new trial.
Judge Chauncey Browning participated in the decision of this case but his death occurred before the opinion was prepared, approved and announced.
Reversed and remanded.