737 P.2d 384

**Fred KOORY, Jr., a single man dealing with his sole and separate property; George N. Koory, a married man dealing with his sole and separate property; and Dolly Gaye Musa, a single woman, Plaintiffs-Appellants,**

v.

**WESTERN CASUALTY AND SURETY COMPANY, a Kansas corporation, Defendant-Appellee.**

**No. 1 CA–CIV 8121.**

Court of Appeals of Arizona, Division 1, Department B.

June 24, 1986.

Jones, Skelton & Hochuli by William R. Jones, Jr., Georgia A. Staton, Phoenix, for plaintiffs-appellants.

Renaud, Cook, Videan, Geiger & Drury, P.A. by J. Gordon Cook, Steve T. Skivington, Phoenix, for defendant-appellee.

## OPINION

CONTRERAS, Judge.

This is an appeal from summary judgment granted appellee Western Casualty and Surety Co. (Western), in an action brought by appellants Koory, et al. (appellant), to recover damages for Western's denial of coverage under the "windstorm" coverage provisions of an insurance policy issued by Western. Because we determine that the loss did not result from a "windstorm" within the meaning of the policy, we affirm the granting of summary judgment.

On March 15, 1982, the parties entered into an insurance contract which provided for general liability, fire and specific named peril coverage of appellant's warehouse. Among the insured perils was extended insurance coverage "against all direct loss caused by ... WINDSTORM...." On March 15, 1983, the roof of appellant's warehouse collapsed following a series of storms. Appellant submitted a claim to Western on the basis that the damage was the result of a "windstorm" within the policy terms. Western denied coverage based upon its engineer's report that the windstorm was not the "sole cause" of the roof's collapse. Appellant then filed a breach of contract action against Western, which it subsequently amended to include a claim for breach of duty of good faith and fair dealing.

On June 19, 1984, Western filed a motion for summary judgment asserting that there existed no material issue of fact since both parties' experts agreed that the wind alone could not have caused the roof to

collapse in accordance with the requirements established in *St. Paul Fire and Marine Insurance Co. v. Central Park Mobile Homes*, 22 Ariz.App. 557, 529 P.2d 711 (App.1974), that there be "a wind of sufficient force to damage insured property, if in a reasonable condition, either by its own unaided action, or by projecting some object against it." *Id.* at 560, 529 P.2d at 714. Following oral argument on the motion, the trial judge concluded:

> In view of the fact that it is undisputed that the collapse of the roof was due to a combination of factors, and thus not due to the "unaided" force of the wind, Defendant's Motion for Summary Judgment is granted.

A formal written judgment was entered on October 31, 1984, from which appellant brings this appeal.

On appeal, appellant argues that the trial court improperly applied the *St. Paul* test by expanding the "reasonable condition" language so as to create a policy exclusion based upon the condition of the building at the time of the collapse.[1] Additionally, appellant argues that applying the reasonable condition requirement under these circumstances violates the reasonable expectation doctrine and the principles set forth in *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984), since it was within the reasonable expectation of the insured that losses triggered by wind would be covered by the term "windstorm." Appellant also argues that it was improper for Western to issue the policy and accept premiums if appellant never could have recovered for any insured event due to the reasonable condition requirement. Finally, appellant argues that a question of fact exists as to what extent the wind contributed to the collapse, and that it was for the trier of fact to decide whether the condition of the structure was reasonable.

Western contends that the *St. Paul* definition is clear, unambiguous, and controlling in this case. It denies creating an exclusion but argues that it is simply applying the "windstorm" definition set forth by this court which reasonably considers the condition of the property when determining whether the damage was actually the result of a "windstorm." Additionally, Western argues that applying the *St. Paul* definition to this case does not violate the reasonable expectation doctrine since Western created no expectation of coverage under the circumstances. Finally, Western contends that summary judgment was proper since both experts agreed that the wind alone could not have caused the roof to collapse absent other contributing factors.

■ In *St. Paul*, this court was faced with the task of adopting a reasonable definition of the term "windstorm" where it is undefined in the controlling policy. After recognizing the existing inconsistencies among the jurisdictions considering the issue, we concluded that:

> [W]here the term "windstorm" is undefined in a policy of insurance, it means a wind of sufficient force to damage insured property, if in a reasonable condition, either by its own unaided action, or by projecting some object against it.

■ While the parties have focused a considerable portion of their argument on the "reasonable condition" requirement, we find it unnecessary to reach that question since we conclude that the record clearly reflects that the loss did not occur as a result of the "unaided action" of the wind nor as a result of the wind projecting some object against the insured property. Thus, contrary to appellant's claim, the proper focus is not upon the extent to which the wind *contributed* to the collapse, but upon whether the loss resulted from the wind alone.

In his deposition, appellant's expert stated that the collapse was due to a combination of factors:

---

1. Appellant also argues that the court erred in failing to construe the policy so as to include coverage for damage caused by both wind and rain which combined in one storm to cause damage. Since we conclude—and Western does not appear to dispute—that there would be coverage if wind-driven rain as an unaided force would have caused the roof, if in a reasonable condition, to collapse, we consider this argument to be extraneous to the issues at bar.

[MR. ZWICKL]: ... [T]here was no one factor by itself that was the sole contributor. The three particular factors that I include are the Item A, the extra weight of at least seven separate applications of built up roofing. Item B, the relatively poor quality of the roof construction, along with the old age of the material. And Item C, the additional loads imposed by the wind and rainstorm which essentially became the triggering mechanism.

\* \* \* \* \* \*

Q. ... Do you feel that hypothetically had the two factors, A and B, not been present, that the roof would have collapsed?

A. No, I don't believe the roof would have collapsed....

\* \* \* \* \* \*

Western's expert stated that he felt the wind had little, if any, significance in the collapse of the roof:

[MR. BRENNER]: I am more of the opinion—stronger in my opinion that the collapse was due to the overloading of the roof structure and not due to the wind, which [Mr. Zwickl] point[s] out as a triggering factor.

In his report, Mr. Brenner noted further that:

... It appears that a considerable amount of water had collected on the roof prior to the collapse and that this load, added to the load of several layers of built-up roofing membrane and the thick pigeon dropping deposit exceeded the capacity of the nailed joints and splices of the wood trusses.

\* \* \* \* \* \*

It is quite clear from the calculations and observations at the site that the nailed joints were not adequate to carry the loads to which they were subjected, resulting in their failure and the collapse of the roof structure.

While the two experts are not entirely in accord as to the exact cause of the collapse, both agreed that it did not result from the "unaided action" of the wind. The "unaided action" requirement in the St. Paul definition is clear and unambiguous. Under these circumstances, we conclude that there remained no material issue of fact to preclude the granting of summary judgment, nor will we overrule our decision in St. Paul.

Appellant argues, however, that imposing the St. Paul definition upon him as a means of precluding coverage violates the "reasonable expectation" policy set forth in Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co., 140 Ariz. at 393, 682 P.2d at 398. In Darner, our supreme court concluded that "a 'contract should be read in light of the parties' intentions as reflected by their language in view of all the circumstances'" and held that "[e]vidence of surrounding circumstances, including negotiation, prior understandings, subsequent conduct and the like, is taken to determine the parties' intent with regard to ... the meaning of the provisions contained in the agreement." Id. Darner does not, however, stand for the proposition that the insured may unilaterally contemplate *total coverage for every actual loss*. Rather, there must be an expectation on the part of the insured induced by the making of a promise or by conduct of the insurer. Appellant in the summary judgment proceedings presented nothing which even suggests any negotiations, prior understandings or subsequent conduct by Western that would place this case within Darner.

Accordingly, because there was no "loss" caused by a "windstorm" within the meaning of the policy provisions, summary judgment is affirmed.

JACOBSON, P.J., and CORCORAN, J., concur.