737 P.2d 388

**Fred KOORY, Jr., a single man dealing with his sole and separate property; George N. Koory, a married man dealing with his sole and separate property; and Dolly Gaye Musa, a single woman, Plaintiffs-Appellants,**

v.

**WESTERN CASUALTY AND SURETY COMPANY, a Kansas corporation, Defendant-Appellee.**

No. CV–86–0436–PR.

Supreme Court of Arizona, En Banc.

May 26, 1987.

Jones, Skelton & Hochuli by William R. Jones, Jr., Georgia A. Staton, Phoenix, for plaintiffs-appellants.

Renaud, Cook, Videan, Geiger & Drury, P.A. by J. Gordon Cook, Steve T. Skivington, Phoenix, for defendant-appellee.

FELDMAN, Vice Chief Justice.

Fred Koory, Jr. (Koory) purchased general liability, fire, and named peril insurance coverage for his warehouse from Western Casualty and Surety Company (Western). Koory's warehouse was severely damaged when the roof collapsed during a March 1983 storm. This lawsuit ensued when Western denied Koory's claim under the "windstorm" section of his policy.

The trial court granted summary judgment for Western and the court of appeals affirmed. *Koory v. Western Casualty and Surety Co.*, 153 Ariz. 408, 737 P.2d 384 (Ct.App.1986). Both courts relied on *St. Paul Fire and Marine Insurance Co. v. Central Park Mobile Homes*, 22 Ariz. App. 557, 529 P.2d 711 (App.1974) for the proposition that the wind must be the *sole* cause of loss. We granted review pursuant to Rule 23(c), Ariz.R.Civ.App.P., 17A A.R.S. (Supp.1986), to determine: (1) whether the trial court and court of appeals misapplied *St. Paul*; (2) whether there are factual issues which preclude summary judgment; and (3) whether the "reasonable expectations" doctrine announced in *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984) is applicable to this case. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## I.  FACTS AND ISSUES

Koory and Western agree that Koory's policy covered "all direct loss[es] caused by ... [w]indstorm" and that the wind contributed, in some measure, to the collapse of Koory's warehouse roof. They also agree that the wind was not the sole cause of the roof's collapse. Various other factors, including the weight of pooling water and the roof's age and condition, also contributed to the collapse.

Koory and Western disagree about whether the wind "caused" the warehouse roof to collapse. Western's expert says the wind played an insignificant role; Koory's expert says that but for the wind, the roof would not have collapsed.

Despite the parties' factual dispute, the trial court granted summary judgment for Western. The court relied on *St. Paul* for the proposition that windstorm insurance covers an insured's loss only if (1) the damage to the insured property is caused solely by the unaided force of the wind, and (2) the insured property is in "reasonable condition." These prerequisites were lacking in this case, the trial court reasoned, because "the collapse of the roof was due to a combination of factors, and thus not due to the 'unaided' force of the wind...."

The court of appeals also framed the issue as "whether the loss resulted from the wind alone," 153 Ariz. at 410, 737 P.2d at 386, and therefore affirmed the trial court's grant of summary judgment. The court's opinion purports not to reach the reasonable condition issue mentioned by the trial court. *Id.*

## II.  DISCUSSION

■ Contrary to the trial court's and the court of appeals' analysis, the scope of "windstorm" coverage does not depend on whether the insured's loss was caused "solely" by the "unaided" force of the wind or on whether the insured property was in "reasonable condition." Koory's policy, the parties' expectations, and *St. Paul*, properly understood, demonstrate that although the force of the wind and the condition of the insured property are relevant to a proper *definition* of windstorm, they do

not limit coverage in the ways suggested by the trial court and the court of appeals.

### A. The Policy Language

■ The plain language of Koory's policy requires neither that the wind be the sole cause of loss, nor that the insured building be in "reasonable condition." Koory purchased insurance for his warehouse, presumably in its then-present condition, against "all direct loss caused by ... [w]indstorm." In this context, "direct" usually "means proximate or immediate." 5 J. APPLEMAN, INSURANCE LAW AND PRACTICE § 3142, at 445 (1970). In Arizona, as in most jurisdictions, an act or force need not be the sole cause of damage for causation to exist. *Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983); *McDowell v. Davis*, 104 Ariz. 69, 72, 448 P.2d 869, 872 (1968). Absent limiting language in the policy, therefore, Koory is entitled to recover if a "windstorm" was the proximate cause of his loss, even "though there may have been other contributing causes." 5 J. APPLEMAN, *supra* § 3142, at 445; *see also post* section II–C–1.

### B. Darner Motors

Koory argues that he relied on the plain language of the policy and that reading new exclusions into the policy violates the "reasonable expectations" principle announced in *Darner, supra*. In *Darner*, we refused to give effect to boilerplate contract provisions that are inconsistent with the parties' intent as expressed in their negotiations, prior understandings, and conduct.

Unlike *Darner*, this case does not present a situation where the insured's reasonable expectations have been undercut by the boilerplate provisions of the policy. In this case, there are no contrary provisions in the policy. *Darner*, however, is not limited to situations where the parties' negotiations or conduct undercut boilerplate provisions. The principles articulated in *Darner* do not permit the insurer to undercut the "dickered deal." *A fortiori*, those principles do not permit courts to imply restrictive conditions contrary to the plain language of the policy. Having purchased "windstorm" coverage, Koory is entitled to exactly that.

The opposite side of the *Darner* coin, however, is that Western sold Koory *only* windstorm coverage. Western did not insure every loss caused by the wind; it insured only those damages caused by "windstorm," a term the policy leaves undefined. Nothing in the transaction itself nor in Western's conduct gave rise to any different reasonable expectation by the insured. Thus, the real issue in this case, as in *St. Paul*, is what constitutes a "windstorm."

### C. St. Paul

In *St. Paul*, the insurer agreed to provide windstorm coverage for a recreation building during the course of its construction. On the day of the accident, a work crew had erected fifty prefabricated roof trusses, with a 42–foot span, across the building. Before leaving, the crew temporarily braced the trusses by nailing a ten-foot board on eight-foot centers across the north side of the trusses. The trusses collapsed while the wind was blowing between eight and twelve miles per hour.

The court of appeals affirmed the trial court's finding that a windstorm caused the trusses to collapse. In deciding what "windstorm" means when it is undefined by the insured's policy, the court noted that some early cases had held that "a windstorm must be something of a violent and unusual nature amounting to an 'outburst of tumultuous force.'" 22 Ariz.App. at 559, 529 P.2d at 713. The court rejected this definition and instead adopted the definition articulated by the Wisconsin Supreme Court:

> In the absence of definition or limitation in the policy, we think that a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either by its own unaided action or by projecting some object against it.... Any other view would work an imposition upon the insured. If [the insurer] wishes to adopt some scale

which establishes the velocity of wind necessary for a windstorm, or . . . desires to limit its liability beyond the point that we have indicated, it should incorporate its proposed standard in the policy by clear terms. . . .

22 Ariz.App. at 560, 529 P.2d at 714 (quoting *Gerhard v. Travelers Fire Insurance Co.*, 246 Wis. 625, 627–28, 18 N.W.2d 336, 337 (1945)). Thus, in the court's view, " '*any wind,* strong and sustained enough to damage the insured property, is a windstorm. . . .' " *Id.* (quoting *Adams Apple Products Corp. v. National Union Fire Insurance Co.*, 170 Pa.Super. 269, 275, 85 A.2d 702, 705 (1952) (emphasis in original)).

The court was quick to point out, however, that not every wind is a windstorm. According to the court, windstorm must be defined by reference to proximate cause *and* the condition of the insured property. Thus, a windstorm is "a wind of sufficient force to damage insured property, if in a *reasonable condition,* either by its own unaided action, or by projecting some object against it." *Id.* (emphasis added).

In this case, the trial court and the court of appeals relied on the terms "unaided action" and "reasonable condition" to conclude that *St. Paul* restricted windstorm coverage to damages caused solely by the wind to buildings in reasonable condition. We disagree with this reading of *St. Paul.* The "unaided action" and "reasonable condition" requirements are definitional terms—a measurement—describing the capability of the wind, not exclusions used to limit coverage for damages caused by a windstorm.

### 1. *"Unaided Action"*

■ In context, *St. Paul* used the term unaided action only to distinguish between damages caused by the wind itself and damages caused by the wind projecting some object into the insured property. 22 Ariz.App. at 560, 529 P.2d at 714. Thus, *St. Paul* does not hold that wind must be the sole cause of loss; rather, it defines windstorm as a wind of sufficient force to damage the insured property "either by its own unaided action, or by projecting some

object against it." *Id.* This condition is satisfied if the factfinder determines that the wind was of sufficient force to be the proximate cause of the insured's loss. *See* 5 J. APPLEMAN, *supra* § 3142, at 445; *Kemp v. American Universal Insurance Co.*, 391 F.2d 533, 534–35 (5th Cir.1968); *Lewis v. St. Paul Fire and Marine Insurance Co.*, 155 W.Va. 178, 184, 182 S.E.2d 44, 47 (1971); *Roach-Strayhan-Holland Post No. 20 v. Continental Insurance Co.*, 237 La. 973, 979–80, 112 So.2d 680, 682–83 (1959).

### 2. *"Reasonable Condition"*

Proximate cause is not the end of the inquiry. As the court of appeals correctly explained in *St. Paul,* the condition of the insured property also is relevant to the definition of "windstorm." The important question is not, however, whether the property was in *objectively* "reasonable condition" at the time of loss. The question is whether the insured property was in "reasonable condition" in comparison to its condition at the time it was insured. This inquiry is necessary "to uphold the expectations of *both* " the insurer and the insured. *St. Paul,* 22 Ariz.App. at 560, 529 P.2d at 714 (emphasis in original).

■ When an insurer agrees to insure a building against windstorm damage, the insured may assume it intended to insure the building in its current condition, even if the building is in objectively unreasonable condition. Thus, in *St. Paul* an eight to twelve mile-per-hour wind was a "windstorm" because the parties had intended to insure a partially constructed building which was structurally unstable and was therefore "vulnerable to damage from the force of the wind." *Id.* If, however, we were dealing with a building that was structurally stable when it was insured, but was subsequently weakened by fire or termites, a ten to twelve mile-per-hour breeze might not be a "windstorm," even though it damaged the building.

■ There is some support in *St. Paul* and the cases it cites for limiting the definition of windstorm to wind that damages buildings in objectively reasonable condi-

tion. Given *St. Paul*'s holding, however, any language that arguably supports such a reasonable condition requirement is overly broad. We reject the proposition that windstorm coverage extends only to buildings in objectively reasonable condition. Insurers are free to expressly limit coverage to buildings meeting certain structural qualifications or to inspect buildings before issuing windstorm coverage. Absent such limitations, however, a windstorm is a wind of sufficient force to proximately cause damage to the "ordinary condition of the things insured...." *Fidelity-Phenix Fire Insurance Co. v. Board of Education*, 201 Okl. 250, 252, 204 P.2d 982, 985 (1948); *accord Great American Insurance Co. v. Railroad Furniture Salvage of Mobile, Inc.*, 276 Ala. 394, 399–400, 162 So.2d 488, 493 (1964); *Stephens v. New Hampshire Insurance Co.*, 92 Idaho 537, 539–40, 447 P.2d 14, 16–17 (1968).

## III. CONCLUSION

Koory's insurance policy does not limit windstorm coverage to damage to buildings in objectively reasonable condition or to damages caused solely by the wind. If the damage to Koory's warehouse was caused by a windstorm, Koory may recover under his policy even though other factors contributed to his loss, and even though his warehouse may have been in "unreasonable" condition. A windstorm is a wind of sufficient force to proximately cause damage to the ordinary condition of the thing insured.

The present record is insufficient to decide as a matter of law whether Koory's warehouse was damaged by a windstorm. Summary judgment is inappropriate whenever a material fact is disputed. Rule 56(c), Ariz.R.Civ.P., 16 A.R.S.; *City of Phoenix v. Space Data Corp.*, 111 Ariz. 528, 534 P.2d 428 (1975). Here, the parties presented conflicting evidence about whether the wind was the proximate cause of the collapse of the warehouse roof. The trial court erred in granting summary judgment.

We reverse the judgment and vacate the court of appeals' opinion. The award of attorney's fees to Western is also vacated.

This case is remanded to the trial court for proceedings consistent with this opinion.

GORDON, C.J., and CAMERON, J., concur.

HAYS, J., participated in the determination of this matter but retired prior to the filing of this opinion.

MOELLER, J., did not participate in the determination of this matter.

HOLOHAN, Justice, dissenting.

The resolution of this controversy is controlled by the decision in *St. Paul Fire and Marine Insurance Co. v. Central Park Mobile Homes*, 22 Ariz.App. 557, 529 P.2d 711 (1974). Any reference to the rubric of *Darner* is unnecessary and irrelevant to the proper disposition of this case.

At issue in *St. Paul* was the definition of the term "windstorm" as used in an insurance policy protecting the insured "against direct loss by windstorm." The insurance contract in *St. Paul* was a builder's risk policy of insurance which covered a building during construction. As the court of appeals recognized, a building under construction is not as structurally stable as a completed building, and it is, therefore, more vulnerable to damage from the force of the wind.

The term "windstorm" was not defined in the insurance policy involved in *St. Paul*, a condition common to many insurance policies. Implicit in the decision in *St. Paul*, and in the cases it relied on, is the recognition that wind is a common occurrence in nature, but the peril which is insured against is wind of such force that it is capable of damaging a building. It is more than the usual wind which occurs on an ordinary day. It is a force which becomes a windstorm.

The court of appeals defined "windstorm" for insurance purposes, as "a wind of sufficient force to damage insured property, if in a reasonable condition, either by its own unaided action, or by projecting some object against it." *St. Paul*, 22 Ariz.App. at 560, 529 P.2d at 714.

The limitation "if in a reasonable condition" was taken from *Pearson v. Aroos-*

*toock County Patrons Mut. Fire Ins. Co.,* 149 Me. 313, 320, 101 A.2d 183, 186. The Maine Supreme Judicial Court in *Pearson* was attempting to formulate a rule which distinguished between "any wind" and a "windstorm," the peril insured against. Unlike fire, wind is a common condition in most areas, and buildings are frequently exposed to various degrees of wind. Maine's high court sought to distinguish between an ordinary wind which wouldn't damage a building "in reasonable condition" but could readily collapse a building in unsound condition, and a windstorm which damages a building in reasonable condition.

*St. Paul* adopted the rationale of the line of cases represented by *Pearson.* The only limitation which *St. Paul* recognized was that which arises when the insurance policy is issued as a builder's risk policy insuring a building during the course of construction. The condition of the building at its stage of construction is the important factor. At various stages of construction the building is not as structurally stable as the completed building. Regard must be given to the condition of the building at its stage of construction.

Although the court in this case rejects the rule in *St. Paul* that the reasonable condition of the building is not a factor, the new rule announced is: "A windstorm is a wind of sufficient force to proximately cause damage to the ordinary condition of the thing insured." Maj. op. at 416, 737 P.2d at 392. Apparently, however, "ordinary condition" means any condition, because the court states, "... Koory may recover under his policy ... even though his warehouse may have been in 'unreasonable' condition." Maj. op. at 416, 737 P.2d at 392. If "ordinary" can be "unreasonable," there is no need to extend my comments in opposition to the court's new rule.

When the trial court attempts to instruct the jury "consistent with this opinion," I wish the trial judge well, but I dissent.