PONDER, Justice.
 

 In these consolidated proceedings the plaintiff, the Bogalusa Gin & Warehouse, Incorporated, is seeking to recover from
 
 *359
 
 each of the defendants, the Western Assurance Company and the Birmingham Fire Insurance Company, $2,950 under two separate windstorm insurance policies, each calling for a coverage not exceeding the amount of $3,000 on buildings owned by the plaintiff, one of which was destroyed and another damaged by a windstorm. The plaintiff is also seeking to recover $10 from each of the defendants, representing the court cost incurred by the defendants’ effort to remove the proceedings to the federal court, and costs. The suits are identical except they involve different defendants.
 

 The defense to the suits is to the effect that the insured building collapsed as a result of decay. Upon trial the lower court gave plaintiff judgment'in the sum of $1,-585, interest and cost, against each of the defendants. All of the litigants have appealed. The appeals have been submitted.
 

 On February 18, 1939, each of the defendants issued a separate tornado and windstorm policy to the plaintiff calling for a coverage not exceeding $3,000 on a certain building or buildings located in block 416 of Bogalusa, Louisiana. The structure was insured as one building when, as a matter of fact, it was actually composed of three connected buildings. The insured property was formerly a woodenware assembly plant and plywood factory and was acquired by the plaintiff for a consideration of $6,000 a short time before these policies were issued. These buildings were approximately twenty-five years of age and were occupied by the White Wood Products Company and the Great Southern Lumber Company until a short time before the plaintiff purchased them and within one year of the loss occasioned. On June 25, 1939, one of the buildings was blown down by windstorm and another was damaged by its falling. The testimony in respect to the condition of the building which was blown down is somewhat conflicting. The building was some twenty-five years old and decay had set in in many parts of it. It was not in the best of condition at the time it was blown down. However, we reach the same conclusion as reached by the trial court that the building did not collapse of its own accord under the testimony in this case. In fact, the testimony clearly shows that the building collapsed during the windstorm. The only testimony to the contrary is conjectural. There was testimony offered by the defendants of witnesses who were of the opinion that the building would have collapsed owing to its decayed condition. We cannot accept this class of testimony in the face of the positive testimony that the building was blown down as a result of the windstorm.
 

 Counsel for the defendants contends that the wind on that occasion did not reach the velocity of a windstorm. The testimony of the two witnesses from the United States Weather Bureau is to the effect that the average velocity of a wind in order to constitute a windstorm is at least twenty-seven miles per hour. ^The preponderance of the testimony is to the effect that the velocity of the wind on the occasion involved herein was not less than thirty-five miles per hour. Such being the case, the velocity of
 
 *360
 
 the wind reached the degree of a windstorm.
 

 The plaintiff contends that under the evidence in this case he is entitled to recover the full amount sued for and that the judgment of the lower court should be amended to that effect. In support of this contention he relies on testimony showing that it would cost between $6,000 and $8,000 to replace the destroyed building and to repair the damaged building. No testimony as to the value of replacement was offered by the defendants. The defendants appear to be relying solely on the amount the plaintiff paid for the buildings as a criterion in estimating the value of the loss suffered by the plaintiff. The defendants’ agent who issued the policies testified that 'he considered the buildings the insurable risk at the time the policies were issued. An officer of the plaintiff-corporation testified that at the time the policies were issued this agent of the defendants told him in the presence of another witness that the buildings were a good risk and could be insured for $10,000 or $15,000. This testimony was not controverted. We cannot accept the defendants’ contention that the purchase price of the buildings should govern in fixing the amount of loss suffered by the plaintiff. The buildings may or may not have been worth the price the plaintiff paid for them. To say the least, the defendants insured them against any loss occasioned by windstorm to the .amount called for on the face of the policies. In arriving at the amount the plaintiff is entitled to recover, we must necessarily take into consideration all of the facts, viz., the price paid for the buildings, the estimate of their value made by the defendants’ agent’ at the time the policies were issued, the policies themselves, the terms of the policies and the cost of replacement. In considering all these facts we are compelled to reach the conclusion that the plaintiff is entitled, to recover the amount sued for.
 

 For the reasons assigned the judgments of the lower court are amended so as to increase the -award to the plaintiff against each of the defendants from $1,585 to $2,-960. • As thus amended the judgments are affirmed at defendants’ cost.
 

 O’NIELL, C. J., took no part.