112 So.2d 680

ROACH–STRAYHAN–HOLLAND POST NO.
20, AMERICAN LEGION CLUB,
INC.

v.

CONTINENTAL INSURANCE COMPANY
OF NEW YORK.

No. 43631.

June 1, 1959.

Bienvenu & Culver, P. A. Bienvenu, New Orleans, for defendant-appellant.

Monty M. Wyche, R. H. Lee, Benton, for plaintiff-appellee.

FOURNET, Chief Justice.

The defendant, Continental Insurance Company of New York, prosecutes this appeal from a judgment in favor of plain-

tiff, Roach-Strayhan-Holland Post No. 20, American Legion Club, Inc., for $5,000, the limit of a policy of fire insurance with extended coverage, including "direct loss by windstorm,"[1] issued by defendant on an American Legion Hall built by plaintiff, contending that the collapse of the building was due to improper construction, and assigning as error the trial judge's holding that plaintiff established by a preponderance of the evidence that a loss by windstorm, within the meaning of the policy of insurance and the applicable law, had occurred so as to entitle it to recover under the policy.

The insured building, set among pine trees in a sparsely settled area on land facing the highway, about half a mile from Plain Dealing, Bossier Parish, and used by Legion members as a gathering place for themselves, their families and friends, was constructed in 1950 with the aid of an engineer's design of the wood truss of the roof, and consisted of one large room, an end of which was separated by a partition and accommodated a kitchen, storage space and two rest rooms; it was covered by one roof, of flat construction measuring 60 x 45 feet, which extended possibly eight or nine feet beyond the front and rear walls in a wide overhang or apron. At some time between midnight and early morning of December 28, 1954, the roof collapsed; at the time no one was in or about the building, and the condition was discovered by a Legion member who passed on his

[1.] Under "Extended Coverage" the following pertinent provisions are found: "In consideration of the premium for this coverage, shown on the first page of this policy, and subject to provisions and stipulations (hereinafter referred to as 'provisions') herein and in the policy to which this Extended Coverage is attached, * * * the coverage of this policy is extended to include direct loss by Windstorm, Hail, Explosion, Riot, Riot Attending A Strike, Civil Commotion, Aircraft, Vehicles and Smoke. * *

"Substitution of Terms: In the application of the provisions of this policy, including riders and endorsements (but not this Extended Coverage), to the perils covered by this Extended Coverage, wherever the word 'fire' appears there shall be substituted therefor the peril involved or the loss caused thereby, as the case requires. * * *

"Provisions Applicable Only to Windstorm and Hail: This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail), snow storm, waves, tidal wave, high water or overflow, whether driven by wind or not.

"This Company shall not be liable for loss to the interior of the building or the property covered therein caused (a) by water, rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail, and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by water, rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail or (b) by water from sprinkler equipment or other piping, unless such equipment or piping be damaged as a direct result of wind or hail."

way to work that day. Photographs show the apron ends in a lifted position, and the roof as having fallen into the middle of the large room.

On trial of the case[2] the plaintiff produced several witnesses who reside in the vicinity and who each testified that at some time after midnight of December 28, he or she was awakened by the force of the wind; all agreed that it was very strong, and was followed shortly by rain, lightning and thunder. Several people arose in a feeling of anxiety and alarm, and looked out to survey the elements and to determine what could be expected; one family of three got dressed with the intention of driving in to town to take refuge in a more substantial building than their frame home, but decided against it because the wind was blowing so hard they were afraid to drive on the highway. One witness said the wind was the strongest in the eight years he had lived in his house; another testified that the streets of the nearby town were littered with debris, and that pieces of garage roof, such as broken tin siding and tarred felt roofing, were loosened and blown off; it was also established that a claim had been filed for windstorm damage to the roof of a building in Plain Dealing.

The defendant, in an effort to minimize the above testimony, offered a report of the U. S. Weather Bureau at the Shreveport Station (thirty miles away) covering the period to show that the wind there recorded reached no higher velocity than twelve miles per hour and failed to indicate the presence of a windstorm in the area; but devoted its most serious efforts to demonstrating that the cause of the failure of the roof was its inadequate construction, and to this end defendant offered evidence to prove that the engineer's design for the wood truss of the roof called for use of $\frac{3}{4}''$ bolts in all connections of timbers used in the truss, called also for a splice of the main timbers, likewise to be fastened with bolts, and in each instance of a splice, each side of the main timber was to be reinforced—whereas in fact the carpenter used nails instead of bolts and in insufficient number to hold timbers together for the load imposed; and used one 2 x 6 inch splicing board instead of the required 1 x 6 inch boards. Defendant offered testimony of two insurance adjusters and an engineer (the engineer who had designed the wood truss and specified the use of bolts) to show that the roof collapsed because of faulty construction aided by an accumulation of rain water, and counsel emphasized the absence of broken windows, fallen branches, and the fact that the aprons' underfacing, a brittle substance, fell to the ground immediately below.

2. At the commencement of the trial defense counsel stipulated that if recovery were allowed, it should be for the full limit of the policy.

At the conclusion of the testimony the trial judge dictated into the record certain remarks in order to assist counsel in preparation of briefs, indicating that he found as a fact [3] (a) that the building was improperly constructed (but aptly observing " * * * of course, a building can be insured when it is improperly constructed)," and (b) that there was an unusual amount of wind on the night of December 28, 1954.[4]

■ While the question of what risks and losses are covered by policies insuring against loss or damage due to windstorms and disturbances of a similar nature are naturally determined by the phraseology of the policy, in the absence of definition or limitation on the subject, a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either (a) by impact of its own force or (b) by projecting some object against the property.[5] Moreover, since in a great number of factual situations it has been shown that wind is often not the sole contributing cause of the loss or damage, acceptance has been accorded the view that it is sufficient, in order to recover upon a windstorm insurance policy not otherwise limited or defined, that the wind was the proximate or efficient cause of the loss or damage, notwithstanding other factors contributing thereto.[6] This is in line with the jurisprudence of our own State. In the case of Bogalusa Gin & Warehouse, Inc. v. Western Assur. Co., 199 La. 715, 6 So.2d 740, 741, we rejected a defense similar to the one made herein, i. e., that the collapse of the insured building was the

---

3. In finding for plaintiff, the trial judge did not assign written reasons.

4. The remarks of the trial judge in their entirety were these:

"I'm satisfied that the building was not constructed according to the specifications, and that if it had been constructed according to the specifications, of course it would have been much stronger than it was. There's no question in my mind about that: That it was improperly constructed. It should have had bolts in it and, to say the least, it should have had two 1 x 6 braces on each side of that splice; and, to that extent, the building was improperly constructed.

"The major question, as I see it, is whether or not, accepting the building as it was, which was improperly constructed — and, of course, a building can be insured when it's improperly constructed — so, accepting the building as it was, whether or not the condition was due to a windstorm.

"I'm also convinced, from the evidence in the case, that there was an unusual amount of wind that night; more than usual. Whether that's going to be classified as a windstorm, I'm not prepared to pass on that, because that's probably a mixed question of fact and law; but I am convinced, from the lay evidence, that there was an unusual amount of wind in that area that night.

"Those are the only questions which I am passing on at this time, so that you will be in a better position to prepare your briefs."

5. 29 Am.Jur., Verbo Insurance, Sec. 1052, cumulative supplement p. 141.

6. See Annotation 166 A.L.R. at 382; Anderson v. Connecticut Fire Ins. Co., 231 Minn. 49, 43 N.W.2d 807.

result of decay, and that the wind did not reach the velocity of a windstorm, observing: "The building was some twenty-five years old and decay had set in in many parts of it. It was not in the best of condition at the time it was blown down. However, we reach the same conclusion as reached by the trial court that the building did not collapse of its own accord under the testimony in this case. In fact, the testimony clearly shows that the building collapsed during the windstorm. * * *" 199 La. at page 717, 6 So.2d at page 741. See, also, North British & Mercantile Ins. Co. v. Sciandra, 256 Ala. 409, 54 So.2d 764, 27 A.L.R.2d 1047, a case presenting a similar claim, in which identical defenses of improper construction and accumulation of water on the roof were urged, where the question was resolved in favor of the plaintiff-insured.

We think that the trial judge was eminently correct in his disposition of this case. While there is no proof in the record of the velocity of the wind, according to the testimony of numerous witnesses it was "blowing very hard," was the strongest felt in years, had characteristics of force and violence which were alarming; and, in our opinion, the judge properly concluded that even though the construction of the building was faulty, the force of the wind was the dominent and efficient cause of the collapse of the roof and resulting damage.

The plaintiff has asked that the judgment be amended by allowing the penalties provided for in R.S. 22:658 and assessing a reasonable attorney's fee, as prayed for below; but in view of his failure to appeal or to answer the appeal taken by the defendant, we are powerless to do so.

For the reasons assigned, the judgment appealed from is affirmed.

112 So.2d 683