FRED W. JONES, Judge.
A husband and wife sued for damages for injuries allegedly sustained by the wife as the result of a battery committed upon her by an on-duty Shreveport police officer. From a judgment in favor of the plaintiffs against the City of Shreveport alone, the latter appeals, along with the Shreveport City Council and the two defendant police officers. We reverse.
This suit was filed on March 24, 1977, based upon an incident which allegedly occurred on March 25, 1976. Named as defendants were Terry Hayes, Commissioner of Public Safety for Shreveport, Calhoun Allen, Mayor of Shreveport, the Shreveport City Council, and E. R. Waites and Mike Sullivan, Shreveport police officers. An exception of no cause of action or no right of action was filed on behalf of Hayes, Allen and the Shreveport City Council, pointing out that the petition alleged employment of the two police officers by the City of Shreveport rather than by the exceptors. The exception was ultimately sustained as to Hayes and Allen, leaving as the only defendants the Shreveport City Council and the two police officers. After the trial, which began on July 31, 1980, judgment was rendered in favor of plaintiffs against the City of Shreveport only, awarding general damages of $3,000 and medical expenses of $480.
The City of Shreveport contends on appeal that the judgment rendered against it was a nullity because the municipal corporation was not made a party to this litigation nor was it ever cited. Obviously, this is not a frivolous argument. Louisiana R.S. 33:53 provides in part that “the corporate name of a city shall be ‘The City of _;’ . . . and by such name it may sue and be sued ...” Louisiana R.S. 13:5107 specifies the manner in which citation and service may be obtained in suits against political subdivisions of the state. *1304 In this case the City of Shreveport was not named specifically as a party defendant nor was service made upon it as prescribed by law. However, rather than disposing of the appeal on this procedural basis, we have considered the matter on the merits, concluding that the trial judge was clearly wrong in his factual determination which served as a basis for the judgment against the City of Shreveport, assuming that the latter was properly made a- party defendant.
The record reveals that on March 25, 1976, at about 5:00 o’clock in the afternoon, Ernestine Samuels, agent for a life insurance company, went to the Shreveport residence of a customer, Eula Gilliam, to collect an insurance premium. Since a heavy rain had started falling, Mrs. Samuels did not leave after receiving the premium. Instead, she and Mrs'. Gilliam sat around the latter’s dining room table taking for several hours, while Mr. Gilliam watched television in another room. Both ladies denied consuming any alcoholic beverages during this time.
When the rain started to slacken at about 9:00 o’clock, Mrs. Samuels went out of the house to depart in her car but could not start the engine. With assistance from Mr. Gilliam, she was finally able to start the vehicle. However, Mrs. Gilliam though it advisable to accompany her friend home because of the possibility she might experience further difficulty with her automobile on the way. Mrs. Gilliam requested that her husband follow in his car in order to bring her back, but Mr. Gilliam apparently misunderstood the request since he simply went back into the house and resumed his television viewing.
After traversing several streets, with Mrs. Gilliam seated beside her, Mrs. Samu-els drove onto 1-20 and proceeded west, driving at a slow rate of speed because of the rain and the fogging of her windshield, which Mrs. Gilliam continually wiped with a towel. They left the interstate highway at the Monkhouse Drive exit, stopped at that thoroughfare before turning left onto it, and then proceeded to the intersection with Hollywood Avenue. After making what Mrs. Samuels described as a “slouchy” left turn onto Hollywood Avenue, the driver observed a flashing red light to the rear and pulled over to the curb, stopping her vehicle.
The testimony of Mrs. Samuels and Mrs. Gilliam is substantially similar concerning the critical events which next transpired. They stated that a uniformed police officer (later identified by them as defendant Waites) came to the driver’s window, made a remark about her erratic driving and asked what she had been drinking. As the two car occupants started to explain about the trouble with the vehicle, without any prior warning and for no rational reason, another police officer (later identified by Mrs. Samuels as the defendant Sullivan) suddenly opened the car door on Mrs. Gilliam’s side, jerked her out of the vehicle and proceeded to administer blows to her head and body, giving her a thorough beating.
Mrs. Samuels testified that, although it was dark and still raining, she observed Sullivan strike Mrs. Gilliam a series (more than five) of “terrible blows” about the face, head and arms, during which time Mrs. Gilliam was “screaming and hollering”. She said that Sullivan appeared to be attired in a jump suit and that both officers stood out in the rain “getting drenched”.
Mrs. Samuels acknowledged that, after receiving a field sobriety test, she was arrested for driving while intoxicated. It was her testimony that she was taken to the police station by Officer Waites in a police car. She denied taking any kind of test for alcohol at the station. She said that she saw Mrs. Gilliam, who had been handcuffed and transported in another vehicle, at the police station. Mrs. Samuels stated that Mrs. Gilliam was wet and muddy, that her face was beginning to swell, and that her arms had deep scratches or claw marks on them. Mrs. Samuels was released on bond that night. The next day she accompanied Mrs. Gilliam to police headquarters to make a formal complaint about the conduct of the officer who committed the battery upon Mrs. Gilliam. It was then that she allegedly learned his name was Sullivan.
*1305 Mrs. Gilliam testified that they were stopped by Officer Waites “for no reason whatever” since there was nothing unusual about Mrs. Samuels’ driving. She stated that an individual other than Waites, whom she could not recognize because of the darkness, pulled her out of the car and struck her repeatedly. She said that he knocked her down and “every time I tried to get up he just kept hitting me and after I stood up he was still hitting me and knocking me back down.”
Mrs. Gilliam was arrested for using profanity in public and was taken to the police station for booking. She was released on bond that night and returned to her home. She asserted that, upon arising the next morning, she could hardly walk, had difficulty turning her neck and could not raise one of her arms. She consulted her physician because of these complaints. Following that, Mrs. Samuels drove by and took her down to police headquarters to make a formal complaint about the police officer’s misconduct.
The involved officers’ version of the incident is quite different from that of Mrs. Samuels and Mrs. Gilliam. Michael Sullivan testified that on March 25, 1976 he was employed as a detective by the Shreveport Police Department and was working the evening shift, attired in a business suit. That evening, in a misty rain, he was driving west on 1-20 when he noticed another vehicle proceeding ahead of him at a very slow rate of speed, weaving from lane to lane. As he turned onto the Monkhouse Drive exit, preparatory to traveling to the Shreveport airport, the other car turned abruptly across the exit lane in front of him. He followed it as the driver turned left onto Monkhouse Drive and then left again on Hollywood Avenue. At that point Sullivan turned on the red revolving light positioned on his dashboard and stopped the other car.
Sullivan stated that he walked to the driver’s side of the car, displayed his officer’s badge, and asked the operator if she had been drinking. Both the driver and her passenger started talking about car trouble. At this time Officer Waites drove up in a “paddy wagon” and stopped to render assistance. The two officers had the driver get out of her vehicle and started administering a field sobriety test to her. Sullivan asserted that she smelled of alcohol and was unsteady on her feet. He said that the test was interrupted by Mrs. Gilliam who got out of the car and started cursing the officers. Waites told her to be quiet and get back into the car or he would place her under arrest. Mrs. Gilliam continued cursing and struck at Waites who threw up an arm to ward off the blow. Mrs. Gilliam struck his arm and fell to the ground. She then grabbed Waites by the leg as he was attempting to help her up. Sullivan stated that he went over, placed handcuffs on Mrs. Gilliam, and the officers lifted her to her feet. She was placed under arrest and transported to the police station by another officer. Sullivan, who was 6'3" tall and weighed 245 pounds, denied ever striking Mrs. Gilliam.
The testimony of Officer Waites was substantially the same as that of Detective Sullivan. Arriving in his “paddy wagon” at the place on Hollywood Avenue where Sullivan had stopped the Samuels vehicle, Waites got out and together with Sullivan had started giving the driver a field sobriety test when the passenger began haranguing them. Since she was standing only a foot in front of him, cursing, Waites could easily smell alcohol on her breath. When she refused to get back into the car and continued cursing, Waites informed Mrs. Gilliam that she was under arrest. In response, she struck at him with her right hand. Waites testified that as he held up his left arm to protect himself against the intended blow, Mrs. Gilliam hit that arm, slipped and fell to the pavement. When he reached down to assist her to her feet, she grabbed him by the leg and started pinching it. He pulled her hand away. At that time Sullivan came over and the two of them placed handcuffs on Mrs. Gilliam. Waites, 6'4" tall and weighing 220 pounds, denied ever striking Mrs. Gilliam.
After Mrs. Gilliam was subdued, Waites took Mrs. Samuels to the police station. He stated that Mrs. Samuels spoke with slurred speech, was unsteady on her feet, and was *1306 obviously intoxicated. Upon their arrival at the station, Waites read Mrs. Samuels her constitutional rights and remained in the room while another officer administered the alcohol breath test to Mrs. Samuels, using a photo-electric intoximeter machine.
John Guevara, who was a lieutenant “in the patrol division of the Shreveport Police Department on the date in question, testified that he was called to assist Waites and Sullivan because of their reported difficulty in effecting the arrest of two females they had stopped. Upon arriving at the scene Guevara said that one of the females was sitting in the “paddy wagon” and that the other (later identified by him as Mrs. Gilliam) was standing in front of that vehicle using loud and abusive language.
Guevara transported Mrs. Gilliam to the police station in his patrol car. He stated that she had a strong odor of alcohol on her breath and appeared to be extremely intoxicated. Although apparently disturbed; Mrs. Gilliam made no complaint of police mistreatment.
Guevara also had án opportunity to observe Mrs. Samuels at the police station. He testified that she was also in a state of intoxication.
Ernest Gullion, a Shreveport police officer, testified that he administered a PEI test for alcohol to Mrs. Samuels on the night of March 25, 1976, and that the test result showed an alcohol blood content of .120%.* Gullion had been properly certified to administer tests of this nature and had been performing them for some three and a half years. He added that from his personal observation Mrs. Samuels appeared to be intoxicated.
On the night of her arrest booking photographs were made of Mrs. Gilliam at the police station. These pictures, received in evidence at the trial, do not reveal injuries to her head or eyes.
Mrs. Gilliam visited Dr. V. M. Osetinsky on March 26, 1976, the day after her encounter with the police officers and her arrest. She complained of hurting in her arm and shoulder because of being “manhandled” by the police. Dr. Osetinsky noted in his records that Mrs. Gilliam was a 43 year old black female, 5'4" tall, weighing 185 pounds. He testified that, upon examination, he found a bruise on the right arm about IV2 by 4 inches in size; a small superficial abrasion in the area of the bruise; and a mild swelling on the right side of the neck, without discoloration. No mention was made of head injuries nor of swelling about the eyes.
In a comprehensive written opinion the trial judge made the following significant findings of fact: (1) That Mrs. Samuels was driving her car in an erratic manner, giving the police officer “every reason and right” to stop her; (2) that Mrs. Samuels was operating her vehicle while under the influence of an alcoholic beverage; (3) that it was only after the Samuels car was stopped by Sullivan that Waites arrived on the scene; and (4) that Mrs. Samuels was asked to get out of the car and thereafter Mrs. Gilliam got out of the vehicle. Each of these findings of fact necessarily involved a determination by the trial judge, in assessing witness credibility, that Mrs. Samuels and Mrs. Gilliam were testifying falsely on those points and the police officers were testifying truthfully.
However, the trial judge then concluded that one of the police officers (whom he could not identify because of the confused testimony) used more force than was necessary to arrest Mrs. Gilliam. The only basis for this finding was the trial judge’s determination that the nature of Mrs. Gilliam’s injuries, as described by her, Mrs. Samuels and Dr. Osetenski, was such that they “must have resulted from various blows instead of one slip and fall since they were great enough to draw blood.”
We are aware, of course, that on questions of fact a reviewing court may not disturb findings by the trial judge, based upon evidence which furnishes a reasonable basis for those findings, in the absence of *1307 manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, if the appellate court concludes that the trial judge’s factual findings are clearly wrong, the mere fact that some record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance. Davis v. Owens, 368 So.2d 1052 (La.1979).
In this case we have concluded that the trial judge was clearly wrong in his finding that, because of the nature of her injuries, Mrs. Gilliam must have been the victim of excessive force inflicted upon her by one of the police officers. First, it is obvious that if Mrs. Gilliam had been struck the number of forceful blows described by her and Mrs. Samuels, the injuries inflicted would have probably been apparent from her booking photographs and would certainly have been observed by Dr. Osetinsky the day after the alleged battery. We consider it extremely significant that Dr. Osetinsky saw no evidence of such a vicious beating. Conversely, the injuries he described were entirely consistent with bruises received by one who slipped and fell as the police officers testified happened to Mrs. Gilliam. On its face the testimony of Dr. Osetinsky impeaches that of Mrs. Gilliam and Mrs. Samuels on this point. In fact, we note that the trial judge did not even accept their version of the alleged battery but simply found that one of the officers use more physical force than necessary in arresting Mrs. Gilliam — based solely upon the description by her and Mrs. Samuels of Mrs. Gilliam’s injuries.
On every other significant factual issue in the case the trial judge discredited the testimony of Mrs. Gilliam and Mrs. Samuels. Once it is concluded, as we do, that their testimony on this question of the nature of Mrs. Gilliam’s injuries was effectively impeached by the lack of corroboration by Dr. Osetinsky, it is apparent that the record does not support the trial judge’s finding of fact which resulted in the judgment against the City of Shreveport. Of course, this entire subject gains proper perspective when viewed in the context of the trial judge’s resolving against plaintiffs the key issue of intoxication. That fact-finding clearly went to the heart of the issue of the credibility of Mrs. Gilliam and Mrs. Samuels. See State v. Luckett, 327 So.2d 365 (La.1975).
To summarize, the record does not show that plaintiffs proved by a preponderance of the evidence that either Detective Sullivan or Officer Waites committed a battery upon Mrs. Gilliam during the course of the incident which occurred on March 25, 1976. Consequently, we reverse the judgment of the district court and render judgment dismissing plaintiffs’ suit.
Costs both in the district court and on appeal are assessed to appellees.

 La.R.S. 32:662, subd. A, par. 1(c) establishes a presumption that a person was under the influence of alcoholic beverages if the test result showed an alcohol blood content of .10% or more.