LEAR, Judge.
This is an appeal by plaintiff from a judgment of the trial court denying him recovery for windstorm damages to his building.
FACTS
Mr. A.P. Leonards is the current owner of a building which formerly was the Officers’ Club of Chennault Air Force Base in Lake Charles. Mr. Leonards acquired this property at some time prior to May 29, *510 1978, and renovated it into a restaurant, which was later occupied by Pat’s of Henderson, as well as a large ballroom, and a lounge known as the C’Est Tout Lounge. The lounge’s roof was flat, and was supported by bar joists which, in turn, rested on a supporting wall. During renovation, this supporting wall was removed and replaced with a supporting member, or beam, which ran along the track of the original wall, (approximately 36 feet). The west end of the beam rested on a 16 foot beam which spanned the ballroom door. The east end of the beam rested on or in the east wall behind the bar in the ballroom. A column supported the center of the beam. Prior to the renovations, Mr. Leonards had purchased an insurance policy from The Traveler’s Insurance Company which, inter alia, provided windstorm coverage for damages sustained by the building.
On May 29, 1978, a weather cell passed through the Lake Charles area, bringing with it high winds and heavy rains. This weather cell passed in the area of the C’Est Tout Lounge, causing extensive damages to the lounge and the surrounding area. The winds produced by this weather cell were in excess of 60 miles per hour, with gusts of up to 100 miles per hour. The high winds were accompanied by heavy rainfall for a short period of time in amounts of up to 2 inches per hour. The roof of the C’Est Tout Lounge collapsed during this windstorm, resulting in extensive damages to the building.
The trial court denied recovery under the policy holding that the damages were caused by excessive water on the roof and not by the wind. It also denied the insurer’s third party demand against the architect employed by plaintiff in connection with the renovations. Plaintiff's appeal followed and by answer the insurer also appealed the dismissal of its third party claim.
LAW
In a similar case, Roach-Strayhan-Hol-land v. Continental Insurance Co., 237 La. 973, 112 So.2d 680 (1959), the Supreme Court held:
Moreover, since in a great number of factual situations it has been shown that wind is often not the sole contributing cause of the loss or damage, acceptance has been accorded the view that it is sufficient, in order to recover a windstorm insurance policy not otherwise limited or defined, that the wind was the proximate or efficient cause of the loss or damage, not withstanding other factors contributing thereto_ However, we reached the same conclusion as reached by the trial court that the building did not collapse of its own accord under the testimony of this case. In fact the testimony clearly shows that the building collapsed during the wind-storm_ See, also, North British and Mercantile Insurance Co. vs. Sciandra, 256ALA409, 54 So.2d 764, 27 A.L.R.2d 1047, a case presenting a similar claim, in which identical defense of improper construction and accumulation of water on the roof were urged, where the question was resolved in favor of the plaintiff-insured. {Roach, Supra at 683).
In Roach, the insured property was an old building, constructed with a flat roof which collapsed during a windstorm. Furthermore, in Roach, improper construction and an accumulation of water on the roof were urged as defenses in order to defeat coverage under the windstorm provision of an insurance policy. The court specifically held a “building can be insured when it is improperly constructed”.
We are mindful that the findings of a trial court is entitled to great weight and they should not be overturned unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.App.1979), Gilliam v. Hayes, 404 So.2d 1302 (La.App.1981). Even where the lower court furnishes a reasonable basis for its findings, manifest error may still exist. The court in Arcen-eaux (supra at 1333) stated:
“ ... the appellate review of fact is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court, there must be a further determination that the record establishes that the find *511 ing is not clearly wrong (manifestly erroneous).”
OPINION
After careful review of the record, we find that the record clearly fails this analysis.
Appellant’s expert, Mr. Thompson, the architect consulted by Mr. Leonards during the renovations, testified that the ballroom portion of the building was taller than the lounge, and that there had to be some movements somewhere to start the collapse of the roof. Mr. Thompson stated that he could see where the beam which fit into the ballroom wall had fallen off of the span, and slid down the wall inside the lounge to the floor. Based on these observations and previous experience, Mr. Thompson concluded that the larger structure (the ballroom) had either moved away from the lounge or vice versa.
On the other hand, the appellee’s expert, Dr. McKee, rejected Mr. Thompson’s theory that the high winds caused the ballroom to move away from the lounge, thereby dislodging the supporting beam. Mr. McKee erroneously assumed that the two buildings were somehow joined together. If the two buildings had indeed been joined together, Dr. McKee’s theories would have been acceptable because the 16' beam attached to the ballroom, upon which the supporting beam rested, would not have been able to move away from the lounge. However, the fact that the ballroom and the lounge were not joined together supports Mr. Thompson’s theory that the wind caused movement between the ballroom and the lounge, thereby causing the collapse of the supporting beam, and the subsequent collapse of the roof. Even Mr. McKee admitted that the 95' segment of the ballroom wall which extended above the roof of the lounge would have had a total force of 5,958 pounds exerted against it at a wind velocity of 70 miles per hour.
Mr. Myers, another expert witness for defendant-appellee testified that the collapse of the roof was due to an excess accumulation of water caused by “perhaps” a 3 inch sag in the roof where the column which supported the beam was located. The measurements upon which this conclusion is based are not of record. In fact this expert testified it was only after he saw a photograph at trial that the “mystery” that was with him all this time concerning his measurements was finally cleared. Mr. Myers’ theory is also erroneous because he failed to consider that the floor of the lounge sloped from the ballroom area to the wall behind the bar, for a total drop of approximately 5 inches, with about one-half of the drop (2.5 inches) being from the ballroom wall to the center column, all of which would enhance roof drainage. Therefore, Mr. Myers’ theory that the collapse of the roof was due to a build up of water cannot be accepted because it is based on an assumption of nonexistent facts.
Mr. Richard Firmature, an electrical and air conditioning contractor who worked on the renovation of the lounge testified to having been on the roof several times in connection with his work on the air conditioners during the renovations. At one point, his job caused him to be on the roof shortly after a rainfall. In his testimony, Mr. Firmature, observed that the roof was fairly flat, that he had seen numerous roofs of similar construction, and the roof in question appeared to drain like a flat roof was supposed to drain.
If, as Mr. Myers suggests, an accumulation of water on the roof caused the collapse, then this accumulation could only have occurred if some force (i.e. wind) held the water on the roof. It is unquestionable that the winds in this case could have caused this effect as they were blowing in excess of 60 to 70 miles per hour.
We find that the wind, though not the sole contributing cause, was the proximate or efficient cause of the damages suffered by the building. The loss is covered by the insurance policy in this case.
Because of its ruling the trial court did not consider the question of quantum. The record before us is complete and we shall fix the amount of damages to which appellant is entitled. Appellant seeks dam *512 ages in the amount of $101,924.02 after making deductions for inadvertently included invoices. Many of the invoices represent labor and material which were combined or comingled with projects not associated with the damages to the building. Appellant has the burden to prove his loss. Mr. Phil Ribbeck estimated the cost of repairs to the building to be in the amount of $71,575.03, which amount he would have bid for the job. We fix the amount to which appellant is entitled at the sum of $71,575.03.
Finally, we consider the issue of whether or not The Traveler’s third party demand against Mr. Thompson, the architect, should be granted. Mr. Thompson was hired as a consulting architect on an hourly basis. He was not hired to do the day-to-day supervision on the job, and, as a matter of fact, appellant hired a foreman to perform this function. He complied with the state law requiring architects to inspect their work and he was not involved in the construction or repair of the roof. In fact the record affirmatively establishes the beam was not constructed in accordance with his specifications. Therefore, there is no basis for holding him liable for the damage caused by the collapse of the roof.
For the reasons assigned, the judgment appealed from is reversed in part, affirmed in part and rendered at appellee’s costs.
IT IS ORDERED AND DECREED there be judgment in favor of A.P. LEONARDS and against THE TRAVELER’S INSURANCE COMPANY in the sum of SEVENTY-ONE THOUSAND FIVE HUNDRED SEVENTY-FIVE DOLLARS AND THREE CENTS ($71,575.03) with legal interest thereon from date of judicial demand until paid and for all costs.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.