# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 11, 2009

Charles R. Fulbruge III
Clerk

No. 08-30092
consolidated w/08-30169

JUDY KODRIN; MICHAEL KODRIN

Plaintiffs - Appellees

v.

STATE FARM FIRE AND CASUALTY COMPANY

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-8180

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:[*]

The home of Plaintiffs-Appellees Judy and Michael Kodrin in Port Sulphur, Louisiana, was demolished in Hurricane Katrina. The Kodrins' insurer, Defendant-Appellant State Farm Fire and Casualty Co. ("State Farm"), denied coverage on their Katrina-related claim, asserting that the damage was excluded from coverage under the policy because it was caused by flooding rather than wind. The Kodrins sued State Farm for coverage. A jury sided with the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Kodrins and awarded them $356,318 in damages and penalties, plus attorneys' fees and costs. State Farm appeals the judgment. We affirm in part and vacate in part.

## I. FACTS AND PROCEEDINGS

When Judy and Michael Kodrin returned to their Port Sulphur, Louisiana, home following Hurricane Katrina in 2005, they found nothing but a concrete slab and debris. Their home and its contents were gone. All that remained was their damaged roof, which lay about 1,000 feet away. Many of the homes in their neighborhood had been separated from their foundations by floodwaters, carried off, then collected together in one area. These other residences had been severely damaged, but remained relatively intact, in contrast to the Kodrins' home, which had been reduced to rubble. Because the damage to their home appeared different from that suffered by the other homes in the neighborhood, the Kodrins concluded that theirs was destroyed by something other than the massive flood that occurred when a nearby levee overtopped. They speculated that a tornado had been spawned during the storm and had demolished their house before the floodwaters arrived.

The Kodrins held homeowner's and flood insurance policies issued by State Farm.[1] The limits of coverage under the homeowner's policy were:

> Coverage A (Building, i.e., home) – $105,000
> Coverage B (Contents) – $78,750
> Coverage C (Outbuildings) – $10,500

The coverage limit under the flood policy was $76,000.

The Kodrins notified State Farm of their homeowner's claim for wind damage on September 17, 2005. A State Farm adjuster inspected the property in mid-October and told the Kodrins that he would inform their insurer that they

---

[1] The flood policy was issued through State Farm by the National Flood Insurance Program.

intended to make a claim for wind damage. State Farm sent a second adjuster to the property on November 26, 2005, the day after the remaining debris had been cleared away. In the meantime, State Farm was administering the payout on the flood policy.[2] The Kodrins settled that claim in December for the policy limit. At about the same time, State Farm had denied the wind damage claims that the Kodrins had submitted under the homeowner's policy.

The Kodrins filed suit in August 2006 claiming, *inter alia*, (1) breach of contract; (2) bad faith under Louisiana Revised Statute § 22:1220 ("R.S. 22:1220") for failure to adjust claims fairly and promptly and for failure to make reasonable efforts to settle the claims; and (3) arbitrary and capricious failure to make payment in violation of Louisiana Revised Statute § 22:658 ("R.S. 22:658"). State Farm removed the case to the Federal District Court for the Eastern District of Louisiana on the basis of diversity of citizenship.[3]

Following a two-day trial in November 2007, a jury found that wind was the cause of the damage to the home and its contents. The jury awarded the Kodrins a total of $196,581, essentially the maximum aggregate amount under the applicable classes of homeowner's coverage, plus $9,737 for additional living expenses,[4] $25,000 each to Judy and Michael Kodrin for State Farm's arbitrary and capricious failure to pay within 60 days, and $50,000 each as penalties for that failure, finding State Farm liable under both R.S. 22:658 and 22:1220. The district court also entered judgment in favor of the Kodrins for attorneys' fees

---

[2] Mr. Kodrin testified that State Farm tried to get him to settle the flood policy over the phone, even before sending an adjuster to inspect the property. The Kodrins said they hesitated to settle the flood claim for fear it would jeopardize their claim for wind damage.

[3] State Farm is a citizen of Illinois. The Kodrins are citizens of Louisiana.

[4] The total is slightly higher than the combined coverage limits. We have not divined the reason for this, but as State Farm does not raise the issue, we do not quibble with it.

and costs in the amount of $139,234 pursuant to R.S. 22:658.[5] State Farm moved for judgment as a matter of law or to alter and amend the judgments, which motions were denied. State Farm timely filed its notice of appeal.

## II. ANALYSIS

State Farm raises a number of issues on appeal, each of which falls into either of two general claims of error: (1) The district court improperly instructed the jury, and (2) the Kodrins failed to offer legally sufficient evidence for a jury to find that State Farm acted in bad faith. In a diversity suit, we apply the substantive law of the forum state, in this case, Louisiana.[6]

## A. Jury Instructions

State Farm contends that the jury instructions on the question of wind damage were erroneous because the district court failed to instruct the jury that (1) the Kodrins could recover only if their damage was caused *exclusively* by wind, and (2) the Kodrins had the burden of proving that the damage to the contents of their home was caused by wind.

### 1. Standard of Review

We review for abuse of discretion whether a jury was properly instructed.[7] "In diversity actions, a federal court's jury instructions must accurately describe the applicable state substantive law, but the district court has wide discretion in formulating the charge."[8] We will reverse "only if the charge as a whole creates a substantial doubt as to whether the jury has been properly guided in

---

[5] The $150,000 in damages and penalties were awarded under R.S. 22:1220.

[6] *Hyde v. Hoffman-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007).

[7] *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 363-64 (5th Cir. 2008).

[8] *Id.* at 364.

4

its deliberations."[9]  Even if we find error, "we will not reverse if we determine, based on the entire record, that the challenged instruction could not have affected the outcome of the case."[10]

### 2. Exclusivity of Wind Damage

The Kodrins' homeowner's policy insured their home and its contents against wind damage, but did not provide coverage for damage caused by flooding.  Policies of this sort are common and have been much-litigated in the wake of Hurricane Katrina and other recent storms.  We have held that a homeowner may recover under such a policy only when wind is the *exclusive* cause of the damage.[11]  The Kodrins insist that Louisiana courts do not read the provision so restrictively; rather, that they hold that coverage under a homeowner's policy is available if flooding is not the "proximate or efficient cause" of the damage.[12]  We acknowledge the existence of tension between the relevant case law of this circuit and that of the Louisiana intermediate courts,

---

[9] *Id.* at 363-64.

[10] *Wright v. Ford Motor Co.*, 508 F.3d 263, 268 (5th Cir. 2007) (internal quotation marks and citation omitted).

[11] *Bilbe v. Belsom*, 530 F.3d 314, 316-17 (5th Cir. 2008) (applying *Leonard v. Nationwide Mutual Insurance Co.*, 499 F.3d 419, 430 (5th Cir. 2007), to Louisiana law).  The policy provision here at issue — called an "anti-concurrent cause" provision — bars recovery when wind and water act together or in sequence. *Id.*

[12] *Landry v. La. Citizens Prop. Ins. Co.*, 964 So. 2d 463, 477 (La. App. 3d Cir. 2007) ("[T]he fact that flood waters contributed to the damage or washes the property away does not compel a finding that flood damage was the efficient or proximate cause of the total loss."), *vacated in part on other grounds,* 983 So. 2d 66 (La. 2008); *see also Best v. State Farm Fire & Cas. Co.*, 969 So. 2d 671, 675 (La. App. 4th Cir. 2007) (quoting 11 COUCH ON INSURANCE 3d, § 153:17).  The Kodrins reliance on *Roach-Strayhan-Holland Post No. 20, American Legion Club v. Continental Insurance Co. of New York* is misplaced.  112 So. 2d 680 (La. 1959).  The case interpreted a policy providing wind damage coverage following a windstorm and rejected consideration of the contribution of other factors, such as building decay, to the damage. *Id.* at 683.  Although the policy contained a water damage exclusion, the exclusion was not at issue, indeed the court noted that the windstorm policy was "*not otherwise limited or defined.*" *Id.*

but we are bound by our own precedent.[13] Moreover, in this case, we view the distinction as being of little import. First, the divergent interpretations of this court and the Louisiana courts matter mainly when two forces, such as flood and wind, act together to cause damage. Here, there is no role for such a middle ground: Neither party maintained that wind and flood acted in some combination, only that one or the other caused all the damage. As a result, the jury's only options were 100 percent wind or 100 percent flood.[14] It was not presented with facts on which to determine that some combination of the two forces caused the damage, and it was not asked to decide on such a basis.

Second, our holding in *Bilbe* creates a stricter rule than the Louisiana appellate court's *Landry* holding and thus is more favorable to State Farm — indeed, State Farm asserts that under *Bilbe* we must reverse. When we apply *Bilbe*, however, the jury instructions survive, so that even if we could consider *Landry*, we would not need to reach the issue. Thus, following *Bilbe*, the Kodrins could recover under their homeowner's policy only if the jury should find that wind alone, and not flooding at all, caused their loss. Conversely, if the jury

---

[13] *See, e.g., FDIC v. Abraham*, 137 F.3d 264, 268-69 (5th Cir. 1998) (addressing instance of *intervening* contrary state appellate court decisions); *see also First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (decision of state intermediate court is a "datum for ascertaining state law," which must be considered by, but is not binding on this court). In this case, *Bilbe* was decided in 2008 after both *Landry* and *Best*.

[14] State Farm contends that the jury was left to contemplate that a wind-driven storm surge might have destroyed the home and, thus, to determine incorrectly that wind coverage was permissible. *See, e.g., Bilbe*, 530 F.3d at 317 n.3 ("The classic example of such a concurrent wind-water peril is the storm-surge flooding that follows on the heels of a hurricane's landfall."). In *Bilbe*, the plaintiff sought coverage under her homeowner's policy based on the contention that Hurricane Katrina's winds drove the storm surge that inundated her home. Finding "storm surge" to be essentially synonymous with "flooding," the court affirmed the denial of coverage. *Id.* at 316. In the instant case, we find no merit in State Farm's assertion: The Kodrins maintained that a pre-flood tornado, not a wind-driven storm surge, destroyed their home.

should find that flooding destroyed the home, the policy's exclusionary clause would bar recovery.[15]

State Farm claims that the wording of the jury instructions vitiated the effect of the policy's flood exclusion by failing to make clear the all-or-nothing requirement of the homeowner's policy — as outlined in *Bilbe*. After stating that the Kodrins had the burden to prove that their claim was covered by the policy, the district court instructed the jury:

> State Farm argues that it properly refused payment to the Kodrins based on its determination that the damage to plaintiffs' property was caused by water, which falls under the flood exclusion in plaintiffs' homeowner's policy, and not by wind. Under Louisiana law, State Farm bears the burden of proving the applicability of any exclusionary clause contained in its insurance policy by a preponderance of the evidence. If you find that State Farm has met its burden of proving by a preponderance of the evidence that the property damage claimed by the Kodrins was caused by a non-covered peril, such as flooding, then State Farm is not liable to plaintiff for any damages under the policy.

State Farm complains that this instruction did not allow the jury to reach a third conclusion, *viz.*, that both wind and flood contributed to the damage and that, if this were the case, the Kodrins could not recover at all.

We are satisfied that the jury instruction correctly and unambiguously recited the law applicable in this case: If flood caused the damage "then State Farm is not liable." Again, neither State Farm nor the Kodrins contended at trial that a combination of wind and flood destroyed the Kodrins' home. State

---

[15] It is important to distinguish between this dispute over which force totally destroyed a home and cases in which the parties disagree as to the causes of various damaged elements of a home. Distinct elements of damage would have to be considered separately. Flood-damaged carpets, for example, would not bar recovery for a wind-damaged roof.

Farm insisted that flooding was the sole cause; the Kodrins were equally insistent that wind was the sole cause. The district court correctly observed that a complicated instruction addressing the combination of the two forces would be likely to do more harm than good, causing confusion by attempting to address a fact pattern not before the jury. As the parties claimed only that either wind alone or flood alone destroyed the home, it is they, not the court, who left the jury no way to find that the damage was caused by some combination of the two.

### 3. Jury Interrogatories

State Farm also complains that the jury interrogatories compounded the problem by asking only about wind. The first interrogatory asked: "Do you find by a preponderance of the evidence that Mrs. Kodrin sustained wind damage to her home?" The ensuing questions regarding other structures on the property and the contents of the home were worded identically.[16] If the jury answered the first questions for each category of property in the affirmative, the next interrogatory asked: "What amount does State Farm owe Mr. and/or Mrs. Kodrin for wind loss to their property?" The verdict form divided this question by type of property: dwelling, other structures, dwelling contents, and additional living expenses.

We can see that, if viewed in a vacuum, the interrogatories might be confusing, but we are comfortable that on the basis of the discrete facts of this case and the way it was tried by the parties, they were not. First, as already discussed, neither side presented its case on a theory that wind was a *contributing* factor; wind either did or did not cause the damage entirely, depending on which party's version was accepted by the jury. This issue was

---

[16] They asked: "Do you find by a preponderance of the evidence that Mrs. Kodrin sustained wind damage to any other structure on her property?" and "Do you find by a preponderance of the evidence that Mr. and Mrs. Kodrin sustained wind damage to the contents of their home?"

central during the trial: State Farm argued vigorously that flooding caused the damage and for that reason, the Kodrins could not recover; the Kodrins argued the reverse. The jury was never presented with facts that would permit it to find that the wind caused some but less than all the damage or that flood caused some but less than all the damage, which is the concern State Farm raises. Additionally, the jury charge itself made clear that if flooding caused the damage, recovery was barred. As a result, the jury could answer the interrogatories affirmatively and find in favor of the Kodrins if — but only if — it found that flooding did not contribute to the destruction of the Kodrins' property. We always presume that jurors follow the instructions given by the trial court,[17] and State Farm offers no argument to persuade us to abandon this well-established presumption here.

The district court has broad discretion in formulating jury instructions, and in this case offered a sound rationale for its choice. State Farm must demonstrate that the language creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."[18] Instead, its argument rests on the contention that the district court omitted an instruction regarding an argument not made by either side at trial. "In reviewing a trial judge's instruction to a jury, we must look at the charge as a whole."[19] When taken together and in context, the district court's instructions and interrogatories amply state the applicable law. As such, the trial court acted well within its discretion.

---

[17] *Russell v. Plano Bank & Trust*, 130 F.3d 715, 721 (5th Cir. 1997) (*quoting United States v. Fletcher*, 121 F.3d 187, 197 (5th Cir. 1997)).

[18] *FDIC v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994) (internal quotation marks and citation omitted).

[19] *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 207 (5th Cir. 1983).

*4. Burden of proof*

Even though State Farm had the burden of proof that the damage to the Kodrins' home was excluded from coverage, the Kodrins had the burden of proof at all times with respect to coverage of their contents. Unlike the policy provision for coverage of the structure, the provision for coverage of its contents was on a so-called "named-peril basis," meaning that the contents of the Kodrins' home were covered *only if* they were damaged by an enumerated cause. "Windstorm or hail" were enumerated causes; flooding was not. This contrasts with the coverage provision for the Kodrins' home itself which was covered *unless* it was damaged by an enumerated exclusion, of which flooding was one. A named-peril provision requires the policyholder to prove that the claim is covered. Thus, the Kodrins had the burden of proof that the damage to or loss of the contents of their home was caused by wind.[20]

The district court instructed the jury that the Kodrins had the burden of proving that their claims were covered. Specifically, the jury charge included four individual elements that the Kodrins had to prove:

> 1) That a valid enforceable contract existed between the parties; 2) That the claim for damage being made under the policy *is covered by the policy*; 3) The amount of the claim for damages under the contract; and 4) that State Farm breached the policy by failing to pay a covered claim.[21]

The district court also instructed the jury that State Farm had the burden to prove the applicability of the exclusionary clause. State Farm protests that the district court did not provide a separate instruction regarding the burden of

---

[20] *See, e.g., Best v. State Farm Fire & Cas. Co.*, 969 So. 2d 671, 675 (La. App. 4th Cir. 2007) (quoting *Carriere v. Triangle Auto Serv.*, 340 So. 2d 665, 666 (La. App. 4th Cir. 1976)); *see also Opera Boats, Inc. v. La Reunion Française*, 893 F.2d 103, 105 (5th Cir. 1990).

[21] Emphasis added.

proof for the contents. Its argument appears to assume that the jury would interpret the instruction as to the exclusionary clause to mean that State Farm had the burden of proof across the boards.

The language of the charge is plain, and State Farm's suggested instruction would be largely redundant. The district court instructed the jury in detail that the Kodrins had the burden of proving coverage and that this burden only shifted with respect to the exclusionary clause.[22] (The jurors had the policy in front of them.) As no exclusionary clause applied to the contents provision, the burden of proof obviously remained on the Kodrins. The interrogatories then separated out each of the categories of covered property so that the jury had to find with specificity that the cause of damage to each was wind if the Kodrins were to prevail.

The interrogatory relevant to contents asked: "Do you find by a preponderance of the evidence that Mr. and Mrs. Kodrin sustained wind damage to the contents of their home?" If the jury instruction left any doubt as to the burden of proof of the cause of contents damage or loss, this interrogatory made perfectly clear that, to recover, the Kodrins had to prove wind damage to their contents.[23] Indeed, the entirety of the Kodrins' position at trial was that wind,

---

[22] State Farm conflates this case with those in which plaintiffs proved only that damage was caused by a hurricane and insisted that was sufficient proof to bring a claim within coverage of a homeowner's policy. *See*, *e.g.*, *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624-25 (5th Cir. 2008). In *Broussard*, the plaintiff claimed to have fulfilled his burden by proving, without more, that the damage to his personal property resulted from Hurricane Katrina. We held that the plaintiff had to go further and prove that the damage was caused by a named peril, i.e., wind. *Id.* *Broussard* is inapposite to the instant case because there is no question that here the jury was instructed that the Kodrins had to do more than demonstrate the claimed damage was caused by a hurricane.

[23] We construe the jury charge and interrogatories as a whole. *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 363 (5th Cir. 2008); *Consol. Cigar Co. v. Tex. Commerce Bank*, 749 F.2d 1169, 1173 (5th Cir. 1985) ("[T]he test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of [the] issues and its duty to determine [the] issues.").

not flooding, caused every bit of their damage. There is no basis on which the jury could have thought that State Farm had the burden of proof with respect to that provision. The instruction properly placed the burden on the Kodrins for proving coverage as the result of wind damage, and there it remained with the sole exception of the exclusionary clause that had no applicability to contents. Thus, to hold otherwise would require not only abandoning the presumption that jurors follow instructions, but also assuming, with no evidence or basis whatsoever, that these jurors acted in direct contravention to the charge given.

## B. Bad Faith

### 1. Standard of Review

We review a district court's denial of a motion for judgment as a matter of law *de novo* and apply the same standards as the district court.[24] We construe the facts and draw all inferences in favor of the non-moving party, here, the Kodrins. We will reverse only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party."[25] Although our review is *de novo*, we afford "great deference" to the jury's verdict.[26]

### 2. Analysis

Under Louisiana law, an insurer owes its policyholder a duty of good faith in settling claims.[27] Failure to pay a claim within 30 days of being presented with satisfactory proof of loss is a breach of the duty if it is "arbitrary, capricious, or without probable cause."[28] In Louisiana, such a breach exposes the insurer

---

[24] *Baker*, 536 F.3d at 362.

[25] *Piñeda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004).

[26] *Id.*

[27] LA. REV. STAT. § 22:1220 (2007).

[28] LA. REV. STAT. § 22:658(B)(1) (2007). Under R.S. 22:658(B)(1) "[f]ailure to make such payment within thirty days after receipt of such satisfactory written proofs and demand

to liability for damages and discretionary penalties under R.S. 22:1220 or to penalties and attorneys' fees under R.S. 22:658.[29] R.S. 22:1220 and 22:658 are penal in nature and must be construed strictly.[30]

The insured has the burden of proving that the insurer acted in bad faith.[31] Under the applicable statutes, "arbitrary and capricious" means "vexatiously," as in a "vexatious refusal to pay" or a refusal to pay without reason or justification.[32] An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss.[33]

The only evidence that the Kodrins offered to demonstrate that this denial was in bad faith is the fact of the denial itself and their expert's testimony that wind actually caused the damage to the home. This is evidence that State Farm was wrong about the cause of damage, but without more, it is not evidence of bad faith. An insurer cannot be held to have acted in bad faith simply because it

---

therefor . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty . . . as well as reasonable attorney fees and costs." An insurer is liable under R.S. 22:1220(B)(5) for "failing to pay the amount of any claim due any person insured by the contract *within sixty days* after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." Emphasis added.

[29] A plaintiff may get penalties under only one of the two statutes, whichever is higher, although he may get attorneys' fees under R.S. 22:658 if he is awarded penalties under R.S. 22:1220. *Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 174 (La. 2000).

[30] *Sher v. Lafayette Ins. Co.,* 988 So. 2d 186, 206 (La. 2008).

[31] *Reed v. State Farm Mut. Auto Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2008).

[32] *Id.*

[33] *Id.*; *see Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1111 (5th Cir. 1991).

13

eventually turned out to be wrong about the cause of the damage.[34] "Where there is a serious dispute as to the nature of the loss, thus leaving the question of coverage in doubt, the insurer's refusal to pay the claim is not arbitrary, capricious or without probable cause."[35] Instead, the Kodrins had the burden of proving that State Farm withheld payment unjustifiably and without cause, and they failed to do so. For example, the Kodrins offered no evidence that State Farm believed that wind was likely the cause of the damage but nevertheless withheld payment.

State Farm denied payment to the Kodrins under their homeowner's policy on its determination that the home and its contents were destroyed by the storm surge (i.e., flooding), an excluded cause of loss.[36] State Farm declared that it determined flooding was the more likely cause of the damage to the home because (1) the Kodrins' neighborhood was inundated when a levee was overtopped during Hurricane Katrina, (2) the Kodrins' home was just one house away from that levee, and (3) many other houses in the area were lifted off their foundations and destroyed by the floodwaters. The Kodrins themselves acknowledged that their claimed wind damage to their home was unusual in their neighborhood, advancing that a tornado must have caused the damage as their speculation why their home was the only one in the area destroyed by wind, not flooding. On these facts, we perceive no probative evidence that State

---

[34] *Icklone v. Travelers Indem. Co.*, 345 So. 2d 202, 203 (La. App. 3d Cir. 1977) ("Penalties may not be assessed merely because the insurer is the unsuccessful litigant in a lawsuit.").

[35] *Id.* At least one Louisiana court has held that when the cause of damage is hotly contested at trial this is evidence that the insurer *did not* act in bad faith. *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 755 (La. App. 2d Cir. 1999).

[36] *See, Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008).

14

Farm acted in bad faith. State Farm's refusal to pay was with reason,[37] even if the jury ultimately rejected that reason.[38] The Kodrins have failed to prove otherwise; they essentially ask this court to find bad faith any time an insurer denies coverage and a jury disagrees. This would unduly pressure insurers to pay out claims that they have reason to believe lie outside the scope of coverage, solely to avoid penalties later. Such a rule would pervert the presumption that insurers act in good faith unless the insured proves bad faith, and this is foreclosed by Louisiana law.[39]

Awards and penalties under R.S. 22:1220 and 22:658, including damages awarded under R.S. 22:1220 for mental anguish, require that the insurer be proved to have acted arbitrarily and capriciously in violation of these statutes. As we hold that, as a matter of law, the Kodrins failed to bear their burden of proving that State Farm acted in bad faith, we vacate the district court's awards of penalties and damages under R.S. 22:1220 and its award of attorneys' fees under R.S. 22:658.

### III. CONCLUSION

We affirm the jury's finding of coverage and its award of damages for the loss of the Kodrins' home and its contents under the homeowner's policy. We vacate that portion of the court's judgment awarding penalties, damages, and

---

[37] *Molony v. USAA Prop. & Cas. Ins. Co.*, 708 So. 2d 1220, 1226 (La. App. 4th Cir. 1998) (insurer's refusal to pay is not arbitrary and capricious "if there is a reasonable dispute between the insurer and insured as to the amount of a loss."). In this case, the dispute was over the all-or-nothing cause of the loss, not over some combined cause.

[38] A determination of whether an insurer acted in good faith is based on the information known to the insurer at the time it refused payment. *La. Bag Co., Inc. v. Audubon Indem. Co.*, ___ So. 2d ___, 2008 WL 5146674, at *7 (La. 2008).

[39] We caution insurers, however, that simply denying coverage on the basis that damage was caused by an excluded peril is not a route to avoiding R.S. 22:1220 and 22:658 penalties and fees. We decide this case on the Kodrins' failure to present evidence legally sufficient to prove bad faith.

attorneys' fees under R.S. 22:1220 and 22:658 resulting from the jury's finding of bad faith. We therefore remand this case to the district court with instructions to enter a revised judgment consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED for entry of judgment in accordance herewith.